Richard YOUNG

v.

Caspar W. WEINBERGER, Secretary of
Health, Education and Welfare.

Civ. No. 72-127-N.

United States District Court,
D. Maryland.

Nov. 14, 1973.

Bernard J. Sevel, Baltimore, Md., for
plaintiff.

George Beall, U. S. Atty., and Andrew
J. Graham, Asst. U. S. Atty., for defendant.

NORTHROP, Chief Judge.

This is an action brought under Section 205(g) of the Social Security Act,
42 U.S.C. § 405(g), wherein the plaintiff, Richard Young, seeks review of
the final decision of the Secretary of
Health, Education and Welfare disallowing his claim for disability benefits pursuant to sections 216(i) and 223 of the
Act, 42 U.S.C. §§ 416(i) and 423.

The plaintiff filed an application for
Social Security benefits on January 22,
1970, alleging that he had been unable
to engage in substantial gainful activity
since July 26, 1969, due to back pains
and frequent periods of unconsciousness.
In his determination on July 8, 1971, the
hearing examiner found that the plaintiff was not entitled to disability benefits under the Social Security Act. That
action was affirmed by the Appeals
Council on September 15, 1971, and became the final decision of the Secretary.
Thereafter, the plaintiff brought an action in this Court seeking a reversal of

the final decision. In an order dated May 4, 1972, this Court remanded the case to the Secretary for further proceedings. The Secretary vacated his previous decision and received further evidence. On February 7, 1973, the Appeals Council affirmed its prior decision denying the plaintiff disability insurance benefits. The plaintiff is again before this Court seeking reversal.

In order to be eligible for the disability benefits sought in this case, the plaintiff must show that he was under a disability which commenced prior to February 7, 1973, when he last met the special insured status requirements. Disability is defined in sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 as:

(d)(1)

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . .

(2) For the purposes of paragraph (1)(A)

(A) an individual . . . shall be determined to be under a disability only if his physical or *mental* impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

(B) . . .

(3) a "physical or mental impairment" is an impairment that results from anatomical, physiological, or *psychological* abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. [Emphasis added].

The plaintiff is a forty-three year old, married male who lives with his wife and three children in Baltimore, Maryland. In 1956, the plaintiff was injured in an automobile accident. Although he subsequently returned to work, the plaintiff was evaluated at the request of his insurance company by Dr. Jesse N. Borden and was found to have a 35–40% disability of the back. Accordingly, the insurance company commenced paying the monthly mortgage payments on plaintiff's home.

On July 26, 1969, plaintiff was again injured as a result of a fall while at his place of employment. He was hospitalized at South Baltimore General Hospital where surgery was performed to remove a ruptured disc. Severe back distress has subsequently followed and the plaintiff suffers from "blackout" spells.

At the initial hearing, plaintiff's mother testified that the family had to keep watch over him as they had observed him "pass out" several times. On these occasions, plaintiff's face would become red, his eyes glazed and his family would ease him to the floor. These "blackout" periods would last between 45 minutes and two hours. Plaintiff indicated that he suffered one or two "spells" a week. Although he did not know when they would occur, he could feel them coming on.

The medical evidence as to the plaintiff's back ailments is rather lengthy and technical. In summary, the plaintiff was examined by several specialists in the field of orthopedics. The substance of their conclusion was that from a purely physiological standpoint there was nothing which would prevent plaintiff from performing "light work." He was to avoid anything which involved climbing, strenuous lifting, and use of motor vehicles.

Plaintiff was also examined by a specialist in internal medicine who ascribed

several possible causes for the plaintiff's periods of unconsciousness. There was the possibility of a post-traumatic seizure disorder, and an electroencephalogram along with x-rays were ordered. The results of these tests proved negative. A second possible cause was a severe vasogal · response to pain which produced sudden hypotension and unconsciousness.

Plaintiff was then examined by a psychologist who concluded that plaintiff was basically depressed with a heavy overlay of hysteria. He stated that he did not believe the plaintiff to be a malingerer. A specialist in psychiatry diagnosed the plaintiff as suffering from hysterical neurosis with depressive features associated secondarily with back trauma. He concurred with the psychologist's analysis that plaintiff was not a malingerer or "faker." His symptomatology was deemed to fit well into a hysterical phenomenon.

Subsequent to his filing of a claim for disability benefits, plaintiff was referred by the Social Security Administration to the Baltimore League for Crippled Children and Adults for a vocational evaluation. Plaintiff's participation in the program · was terminated prematurely due to his ailments. At one point, he was unable to rise from his chair when called for an interview. He had to be assisted to a place where he could lie prone and he remained there for several hours. In a cover letter to its report, the League indicated that plaintiff *"could have vocational potentials in the future should his physical condition improve."* [Emphasis added]

A vocational expert, Daniel D. Mauchlin, was also engaged by the Social Security Administration to review the plaintiff's work history and employability. In his testimony, Mr. Mauchlin stated "that these falling-out episodes for all practical purposes would render him un-employable and that until they are dealt with satisfactorily or explained in some way so that they can be managed it is unlikely he would be able to obtain employment." Mr. Mauchlin, in a subsequent letter, elaborated upon this statement:

A person who experiences the difficulties ·described by the Baltimore League's evaluation staff would be unable to retain any sort of employment in competitive industry or even the most sheltered workshops. The problem· is not only impaired performance which the League Staff noted or the possibility that the client could be a hazard to himself or others but the turmoil and confusion which ensues when a person is found unconscious on the floor. It should be noted that even the League's Staff which is quite familiar with dealing with seriously disabled people, was greatly agitated and had significant difficulty in coping with the situation generated by the client's "falling out."

He concluded that the entire matter hinged on how· much credence could be given to. plaintiff's statements. It was his opinion that the plaintiff was not a malingerer. "He is ·a person who places great value in work, who comes from a family which places great value in work . . . [and] has nothing to gain financially from simulating a disability so severe that it bars him from any hope of employment."

On the merits, this Court concludes that the decision of the Department's hearing examiner, affirmed by its · Appeals Council, was erroneous and was not supported . by substantial evidence. 42 U.S.C. § 405(g). If the issue in a Section 405(g) review is the correctness *vel non* of a finding of fact made by the hearing examiner, then, it is clear that the substantial evidence test applies, and "substantial evidence" has been defined as "more than a scintilla, but less than a preponderance . . . It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole." District Judge Christie in Mullins v. Finch, 303 F.Supp. 1192, 1194 (S.D.W.Va.1969). Of course,

the District Court is not to try the case *de novo*, Underwood v. Ribicoff, 298 F. 2d 850 (4th Cir. 1962), but the limited scope of review does not mean that "courts should surrender their 'traditional function.'" Rowe v. Finch, 304 F.Supp. 221, 222 (S.D.W.Va.1969), rev'd on other grounds, 427 F.2d 417 (4th Cir.). Consequently, this Court must apply the "substantial evidence" test to the hearing examiner's findings of fact and the inferences drawn therefrom.

 In his decision, which was affirmed by the Appeals Council, the hearing examiner stated:

> There is insufficient objective medical evidence in the record to indicate the frequency or the cause of the episodes of unconsciousness and there has not been adequate neurological explanation or treatment.

This statement as well as the final decision shows that no consideration was given to the objective evidence of disability as testified to by the plaintiff, and corroborated by his mother and the Baltimore League's report. The Secretary disregarded the symptomatology of the plaintiff. DePaepe v. Richardson, 464 F.2d 92, 99 (5th Cir. 1972). Yet, subjective symptoms clearly afford a basis for awarding Social Security benefits. Plouse v. Richardson, 334 F.Supp. 1086, 1088 (W.D.Pa.1971). In Bittel v. Richardson, 441 F.2d 1193, 1195 (3rd Cir. 1971), the court said:

> The Act and the regulations promulgated by the Secretary pursuant to it require a subjective determination of the claimed disability. Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits . . . .

Moreover, besides not crediting plaintiff's subjective complaints, the final decision does not properly apply the evidence as set out in the record. This failure relates specifically to the statements of the vocational expert, Mr. Mauchlin, which spoke of plaintiff's employability. It is clear from those statements that plaintiff is not suited for any employment.

 The evidence in this case indicates that the plaintiff is suffering from "blackout spells" over which he has no control. Although there is no apparent physiological cause, there is substantial evidence that the impairment has a basis in hysterical neurosis. And from the reports of the vocational experts, it is clear that the plaintiff is incapable of engaging in any substantial gainful employment. The frequency and unexpectedness of these periods of unconsciousness render him an extreme liability and there is little doubt that an employer would take such a risk on this type of individual.

For these reasons, the plaintiff is entitled to disability benefits under the Social Security Act. It is ORDERED this 14th day of November, 1973, that the decision of the Secretary of Health, Education and Welfare is reversed and judgment will be entered for the plaintiff, Richard Young.