Emma WRENNICK, Plaintiff,

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

No. 76 Civ. 5698.

United States District Court,
S. D. New York.

Sept. 16, 1977.

Emma Wrennick, pro se.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for defendant.

Richard J. McCarthy, Asst. U. S. Atty., Borge Varmer, Regional Atty., Region II, Sidney A. Sayovitz, Oliver Quinn, Asst. Regional Attys., Dept. of Health, Ed., and Welfare, New York City, of counsel, for defendant.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff brings this action pursuant to sections 205(g)[1] and 1631(c)(3)[2] of the Social Security Act as amended, for judicial review of a final decision of the Secretary of Health, Education and Welfare (the "Secretary") denying plaintiff's application for disability insurance benefits and Supplemental Security Income ("SSI") benefits. This review, limited solely to the issue of whether the Secretary's finding that plaintiff was not disabled within the meaning of the statutory definition[3] is supported by substantial evidence contained in the record as a whole,[4] has involved a word by word reading and a "searching investigation" of the entire administrative record.[5] Plaintiff has failed to carry her burden of proof that

---

1. 42 U.S.C. § 405(g).

2. 42 U.S.C. § 1383(c)(3).

3. An individual is considered disabled under the statute

   if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

   42 U.S.C. § 423(d)(2)(A). The definition of "disabled" for purposes of SSI benefits tracks

that above for disability insurance benefits. 42 U.S.C. § 1382c(a)(3)(B).

4. 42 U.S.C. § 405(g). The Secretary's determination with respect to SSI benefits is "subject to judicial review as provided in section 405(g) of this title to the same extent as the Secretary's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3). *See also Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir. 1975); *Gold v. Secretary of HEW,* 463 F.2d 38, 41 (2d Cir. 1972); *Deyo v. Weinberger,* 406 F.Supp. 968, 969 (S.D.N.Y.1975); *Pucci v. Richardson,* 369 F.Supp. 1344, 1347 (S.D.N.Y.1973).

5. *Cf. Gold v. Secretary of HEW,* 463 F.2d 38, 43 (2d Cir. 1972); *Deyo v. Weinberger,* 406 F.Supp. 968, 969 (S.D.N.Y.1975).

the Secretary's decision is not so supported,[6] and hence that determination must be upheld.

Plaintiff Emma Wrennick is 62 years of age. Although she has had some training as a practical nurse, she is otherwise of limited education. Her last position of employment, like the majority of those preceding it, was as a domestic servant doing general housework, cooking and cleaning. Admittedly, plaintiff's main problem is her back; as a result of an operation performed in 1973, plaintiff claims to be unable to bend or lift, to be limited in her ability to get around or to stay in a sitting position for any extended period of time. In addition to her back problems, plaintiff claims to have incapacitating headaches, no strength in one hand as the result of a severe laceration of her right forearm, and hypertension. These ailments have brought her to the emergency rooms, wards and outpatient clinics of three hospitals in the metropolitan New York City area.

Plaintiff's claim has gone through all available administrative channels without once meeting success. Ms. Wrennick applied for disability insurance benefits on September 20, 1973. On November 13, 1973, she was informed that her ailments did not meet the standard of disability which would qualify her for that relief. One week later plaintiff requested reconsideration of that determination; it was upheld on January 21, 1974. She then asked for a hearing. Pending that hearing, plaintiff was advised on August 20, 1974, that upon review of her case, the Social Security Administration had determined that the SSI benefits she had been receiving would cease, also because she was not disabled under the statute. She requested reconsideration on October 2, 1974, and her claim for SSI benefits was thereafter escalated to the hearing level and joined with her disability insurance claim. A hearing was held on January 8, 1975 and resulted in a decision denying her application for disability insurance and upholding the cessation of her SSI benefits. This decision was appealed to the Administrative Appeals Council, which on January 21, 1976, affirmed the Administrative Law Judge's decision.

After analyzing the hospital records and questioning the plaintiff, the Administrative Law Judge concluded that plaintiff has a "musculo-skeletal problem," together with headaches, but that "[t]hese impairments, while troublesome, were not sufficiently severe to preclude substantial gainful activity in her prior occupation as a houseworker or domestic."

Plaintiff's consistent claim to the contrary requires a detailed review of the evidence. Ms. Wrennick's medical problems had their onset on May 14, 1973. Complaining of sharp pains in her lower back, plaintiff went to the emergency room of the Columbia Presbyterian Medical Center. X-rays showed that the pain was due to a needle (which plaintiff claims was left inside her during a 1946 operation) that had lodged in her lower spine. Efforts made to dislodge the needle were unsuccessful and on June 1, 1973, the needle was surgically removed, as was plaintiff's coccyx, the lowest segment in the spine. Plaintiff remained in the hospital until June 16, and returned thereafter for postoperative care. When seen on June 26, 1973, the examining physician felt Ms. Wrennick would be able to return to work after four weeks; in a postoperative checkup on September 25, 1973, although Ms. Wrennick complained of her back pain, the examining physician was of the opinion that plaintiff was able to return to work. In addition to these services at the Columbia Presbyterian Center, plaintiff registered in the Center's group clinic and was periodically seen there until her last visit on March 11, 1975. The physician in the group clinic also feels that she is able to work.

On October 10, 1973, plaintiff went to the emergency room of St. Lukes Hospital, suf-

6. The burden of proving disability rests with the claimant. *Gold v. Secretary of HEW*, 463 F.2d 38, 41 (2d Cir. 1972); *Franklin v. Secretary of HEW*, 393 F.2d 640, 642 (2d Cir. 1968); see *Mathews v. Eldridge*, 424 U.S. 319, 336, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); 42 U.S.C. § 423(d)(5).

fering from an upper respiratory infection and complaining of frequent pounding headaches and high blood pressure. These headaches, according to plaintiff, date back to her mother's death in 1962, although their frequency and severity are said to have increased since the back operation. She was referred to the acute care clinic of that hospital for one week. Plaintiff returned to St. Lukes on a number of occasions through February, 1974, for continued treatment; numerous tests were run, all producing negative results. The headaches were ascribed to tension and medication was prescribed which apparently relieved the pain somewhat.

After blacking out and falling on an open can outside her apartment on January 24, 1974, plaintiff was admitted to the Arthur C. Logan Memorial Hospital. She was diagnosed as having sustained a lacerated wound of her right forearm, underwent surgery for repair of damaged tendons and was discharged on January 30, 1974. This injury caused plaintiff's arm to be set in a plaster cast for four or five months and during that time plaintiff received the services of a homemaker. However, plaintiff now does her own cooking and cleaning, albeit "nothing heavy." Plaintiff was also a patient in Logan's clinics for headaches, dizziness and various neurological symptoms since February 4, 1974.

Plaintiff may thus fairly be said to be afflicted with a number of physical ailments. Although she is presently on various types of medication,[7] this does not seem to provide complete relief. There can be no doubt that she is discomforted by her back and that she is subject to frequent headaches. Her fall and consequent injury further exacerbated plaintiff's total condition. Yet despite repeated visits to each of the three hospitals referred to above, no physician has indicated that plaintiff is unable to return to work—indeed, just the opposite opinion has consistently been offered. Thus, if a judgment were to be made solely with respect to the medical record, the Secretary's decision may not be overturned for lack of substantial evidence.

The Secretary's determination, however, must go beyond the simple acceptance of medical opinion, for "[a] physical or mental impairment 'does not cease to exist because it is difficult of proof.' "[8] Moreover, plaintiff's claims of discomfort were in a sense corroborated by the comments of interviewers observing her which were noted on each of three Medical History and Disability Reports. Similarly, reports of contacts made with her by representatives of various agencies reveal recognition and appreciation of plaintiff's ailments. But other than plaintiff's own statements—which the Secretary must take into account[9] but need not accept[10]—this is the only evidence which at all supports plaintiff's position. And these comments are contained in the same medical reports offering the medical opinion that plaintiff can return to work.

The hearing examiner had an opportunity to personally examine the claimant and assess her claims of disability against the medical evidence. As "the Secretary need not accept a claimant's subjective complaints alone as establishing sufficient impairment,"[11] the evaluation made by the hearing examiner in this regard is

---

7. At the time of the hearing, plaintiff indicated that she was taking Elavil for her nerves, Tegretol for pain and Fiorinal for headaches. (Tr. 30–31).

8. *Cutler v. Weinberger*, 516 F.2d 1282, 1287 (2d Cir. 1975), *quoting in part Celebrezze v. Warren*, 339 F.2d 833, 838 (10th Cir. 1964).

9. *Deyo v. Weinberger*, 406 F.Supp. 968, 973 (S.D.N.Y.1975); *see, e. g., Cutler v. Weinberger*, 516 F.2d 1282, 1286–87 (2d Cir. 1975);

*Robinson v. Richardson*, 360 F.Supp. 243, 248 (E.D.N.Y.1973); *Taylor v. Gardner*, 297 F.Supp. 743, 746 (N.D.Ill.1969).

10. 20 C.F.R. § 404.1501(c) (1977); *Waters v. Gardner*, 452 F.2d 855 (9th Cir. 1971); *Deyo v. Weinberger*, 406 F.Supp. 968, 973 (S.D.N.Y. 1975); *see* 42 U.S.C. § 423(d)(5).

11. *Waters v. Gardner*, 452 F.2d 855, 857 (9th Cir. 1971); 20 C.F.R. § 404.1501(c) (1977).

entitled to considerable weight.[12] Plaintiff was informed repeatedly that she was expected to produce all evidence supporting her claim. There was no indication that the evidence submitted received anything other than the Administrative Law Judge's careful attention and consideration. "[W]here as here, there is evidence to support the examiner's determination, it would be improper for a reviewing court to parse the cold record in search of a different result."[13] The Secretary's decision denying claimant benefits must stand.

Settle order on notice.

---

**12.** *See Alvarado v. Weinberger,* 511 F.2d 1046, 1049 (1st Cir. 1975); *Kirby v. Gardner,* 369 F.2d 302, 304 (10th Cir. 1966); *Good v. Weinberger,* 389 F.Supp. 350, 356 (W.D.Pa.1975); *Ketron v. Finch,* 340 F.Supp. 845, 850–51 (W.D. Va.1972).

**13.** *Deyo v. Weinberger,* 406 F.Supp. 968, 974 (S.D.N.Y.1975). *See Kirby v. Gardner,* 369 F.2d 302, 304 (10th Cir. 1966); *Longo v. Weinberger,* 369 F.Supp. 250, 256 (E.D.Pa.1974); *Urgolites v. Finch,* 316 F.Supp. 1168, 1173 (W.D. Pa.1970).