Edward FIELDS, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE, Defendant.

No. 76 Civil 4184.

United States District Court,
S. D. New York.

Dec. 20, 1977.

**1004**

Edward Fields, pro se.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for defendant; Richard J. Weisberg, Asst. U. S. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff brings this action pursuant to sections 205(g)[1] and 1631(c)(3)[2] of the Social Security Act as amended for judicial review of the final decision of the Secretary of Health, Education and Welfare (the "Secretary") denying plaintiff's application for disability insurance benefits and Supplemental Security Income ("SSI") benefits. The sole issue before the Court is whether the Secretary's determination that plaintiff was not disabled as that term is statutorily defined[3] is supported by substantial evidence contained in the record as a whole.[4] After careful consideration of the entire administrative record,[5] the Court is satisfied that the Secretary's decision is amply supported and hence his determination must be upheld.

Plaintiff is a 44 year old high school graduate. After his tour of duty in the Army, he worked in the blast furnace department of a steel mill, and then was employed for 14 years as a truck driver. In 1969–70, he worked as the production man-

---

**1.** 42 U.S.C. § 405(g).

**2.** 42 U.S.C. § 1383(c)(3).

**3.** An individual is considered disabled under the statute
> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The definition of "disabled" for purposes of SSI benefits tracks that above for disability insurance benefits. 42 U.S.C. § 1382c(a)(3)(B).

**4.** 42 U.S.C. § 405(g). The Secretary's determination with respect to SSI benefits is "subject to judicial review as provided in section 405(g) of this title to the same extent as the Secretary's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3). The Secretary's findings are conclusive if so supported. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Gold v. Secretary of HEW,* 463 F.2d 38, 41 (2d Cir. 1972). *See also Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir. 1975); *Wrennick v. Secretary of HEW,* 441 F.Supp. 482 (S.D.N.Y.1977).

**5.** *See Gold v. Secretary of HEW,* 463 F.2d 38, 43 (2d Cir. 1972); *Wrennick v. Secretary of HEW,* 441 F.Supp. 482 (S.D.N.Y.1977); *Deyo v. Weinberger,* 406 F.Supp. 968, 969 (S.D.N.Y. 1975).

ager of the offset printing department of a radio advertising bureau and following that as a parking lot attendant. His last job was a five or six month stint as a superintendent of an apartment house. Of significance herein are two automobile accidents, one in February 1973 (the "first accident") and the other in January 1975 (the "second accident"). On each occasion, claimant was driving alone and the accident occurred when he drove into the railing or pillar of the highway. Plaintiff suffered lacerations of the head in the first accident and some broken ribs, a collapsed lung (since healed) and bruises in the second.

Plaintiff was unsuccessful with his claim in all administrative channels. On April 19, 1974, plaintiff applied for disability benefits, which were denied on December 19, 1974. Plaintiff requested and received reconsideration, but was again denied benefits. He applied for a hearing, which was held on March 23, 1976. The decision of the Administrative Law Judge ("ALJ"), also denying plaintiff benefits, was affirmed by the Appeals Council of the Department of Health, Education and Welfare on July 13, 1976. Plaintiff thereafter commenced this action for review. He claims disability due to: (1) blackout spells, which during the course of his medical treatment and the administrative proceeding have also apparently been termed dizziness or seizures; and (2) arthritis, for which plaintiff gives an onset date of November 30, 1973.

▮ Plaintiff alleges that the seizures are the result of his first accident. In 1975 he told a representative of the state agency that he generally experienced these seizures approximately once per month but more often in hotter weather. Each seizure was described as being preceded by severe headaches eight days prior to its onset. At the hearing, however, plaintiff admitted that the seizures occurred far more frequently in 1975 than they do today and that they are now controlled by medication.

The medical records of clinics, hospitals and private physicians which have treated the plaintiff are at odds with his early statements concerning both the source and

frequency of these spells. In July of 1974, plaintiff was treated at the Cumberland Hospital in Brooklyn, New York. He there stated that the seizures had begun six years earlier, occurred every six months and that he was and had been a heavy drinker for 15–20 years, consuming one or two pints of whiskey or wine per day. The attending physician's impression was that claimant suffered from chronic alcoholism and his seizure problem was secondary to that, not to any injuries received in an accident.

Plaintiff also went to the Featherbed Lane Dental-Medical Center. Records there indicate that on only one of plaintiff's numerous visits did he complain about blackouts or seizures, in October 1974, and there are a number of references to alcoholism and nervous anxiety. Similarly when examined in the neurology department of Beekman Downtown Hospital's Out-Patient Department, where he had been referred because of complaints of dizziness, plaintiff's major problem was found to be alcoholism, with secondary dizziness. The results of an electroencephalogram ("EEG") taken of claimant sometime between January 10 and March 21, 1975, in connection with the Beekman examination for dizziness, were normal.

Plaintiff's persistent claims of seizures before the administrative agencies resulted in an examination by a neurologist, Dr. William Fosco and an EEG reading by Dr. Sidney Elpern. Dr. Fosco concluded that plaintiff's neurological condition was essentially normal, but diagnosed Mr. Fields as having a "convulsive disorder, etiology probably head trauma sustained in 1973." In part this conclusion was based upon the results of Dr. Elpern's EEG reading which was reported as abnormal, a finding Dr. Fosco deemed "consistent with convulsive disorder." Contrary to his statement at the Cumberland Hospital and the conclusions reached at both the Featherbed Clinic and the Beekman outpatient department, Mr. Fields told Dr. Fosco that he did not have an alcoholic condition.

Dr. Fosco was the only physician to conclude that Mr. Fields' blackout spells result-

ed from the accident. After receipt of additional medical records,[6] Dr. Fosco's diagnosis was reviewed by two review physicians at the Bureau of Disability Determinations. One was told by Dr. Fosco that the claimant's seizures did not occur more frequently than once per month. The second disputed Dr. Fosco's diagnosis entirely, noting that: (a) according to the medical records from the first accident, "all claimant suffered was a 'laceration of the scalp'"; (b) there is no documentation or observation of the seizures; and (c) "[t]he EEG is compatible with, but not diagnostic of, a seizure disorder" in that "[i]t lacks paroxysmal features." Both review physicians concluded that plaintiff retained a sufficient residual capacity to work and recommended that the application be denied.

Finally, with respect to plaintiff's claimed seizures, the notes of Dr. Lacy Blair, plaintiff's present doctor, contain no reference to or complaint of seizures or blackout spells. And at the hearing, as noted above, plaintiff admitted that the seizures did not "occur too often now"; that because of medication prescribed by Dr. Blair, the problem with the seizures was under control. Plaintiff had had one seizure the February prior to the hearing; the last one before that occurred the preceding September. Regardless of their cause, the infrequency of these spells,[7] the fact that plaintiff receives warning by way of headaches, and the ability to control them via medication, not to mention the failure of any physician to conclude that these spells prohibit plaintiff from working, make clear that these spells cannot be said to be disabling under the statute.[8]

Plaintiff's claim of arthritis is similarly lacking in medical support. True, as early as 1971, the medical records of Cumberland Hospital note degenerative hypertrophic changes of the cervical spine. Similarly, x-rays taken at Beekman immediately after plaintiff's first accident indicated the presence of degenerative osteoarthritic changes in plaintiff's cervical spine. The first indication of any complaint of arthritis is a notation in the Featherbed Lane Clinic records quoting plaintiff as claiming to be "suffering from arthritis in right shoulder, arm and forearm." The only other note relating to arthritis in any of plaintiff's many other contacts with doctors and hospitals was made by plaintiff's present physician, Dr. Blair, who, although apparently never having x-rayed plaintiff, twice diagnosed pain complained of as arthritis. Despite this diagnosis, Dr. Blair's final comment in a medical report submitted to the ALJ was that the plaintiff's "[p]hysical exam has grossly been within normal limits: no abnormalities as of March 18, 1976." This conclusion is reinforced by the observations of Dr. Fosco who noted that Mr. Fields' gait was normal and that he was able to move all extremities freely. Finally, at the administrative hearing, plaintiff made no mention of the arthritis or which parts of his body were claimed to be afflicted. Nor was any detail given in plaintiff's application. And in his request for reconsideration, plaintiff focused only on the blackout spells, ignoring his claim of arthritis entirely.

In evaluating a complaint of disability due to arthritis, "[t]he ultimate question [is]

6. When examining plaintiff, Dr. Fosco did not have before him the medical records from Cumberland Hospital (where plaintiff admitted a long history of drinking) or Beekman's outpatient clinic (where plaintiff's problems were attributed to alcoholism). Moreover, plaintiff definitely denied having an alcoholic condition to Dr. Fosco. Under these circumstances, it is understandable that Dr. Fosco's conclusions as to the etiology of plaintiff's dizziness/blackout spells differed from those reached elsewhere and that, as stated below, the reviewing physicians disputed Dr. Fosco's diagnosis.

7. See 20 C.F.R. § 404.1506, App. ¶ 11.02 (1977) (epileptic or other major motor seizures, to be deemed disabling, must have a frequency of more than once per month in spite of prescribed treatment).

8. Compare this case with *Young v. Weinberger*, 366 F.Supp. 81 (D.Md.1973), where the claimant's blackouts were substantiated by evidence, there was medical opinion that they were incapacitating, and the Court found that "[t]he frequency and unexpectedness of these periods of unconsciousness render [plaintiff] an extreme liability" to a prospective employer. *Id.* at 84.

whether the arthritic changes which had taken place . . . did, in view of [claimant's] individual physical and mental makeup, cause pain which became so intensely severe to [him] that it . . . forced [him] to quit working."[9] Although degenerative osteoarthritic changes in plaintiff's cervical spine have been noted and Dr. Blair has diagnosed plaintiff as suffering from arthritis, "arthritis is not disabling in and of itself."[10] There is neither medical evidence that any medication was prescribed for arthritis nor that plaintiff suffers any difficulty in movement—indeed, the only medical opinions are that plaintiff's ability to move is free and unimpaired.[11]

▪ Of course, medical evidence is not the sole criteria by which to judge the propriety of the Secretary's decision—the claimant's own subjective statements must be taken into account.[12] As stated above, plaintiff largely abandoned his arthritis claim and hence there really are no subjective statements to be accounted for with respect thereto. As for the blackouts, plaintiff claims that his condition prevents him from resuming any sort of position he held previously; that this condition, in addition to the after effects of the injuries received in the accidents preclude his resuming work; that any sort of manual labor makes him tired and short of breath; and that even the position held with the radio advertising firm was too strenuous to

be resumed. These statements themselves, however, do not establish the disability, and the fact that they must be considered[13] does not mean that they establish plaintiff's claims.[14] "Indeed if a claimant could, as a matter of law, overcome the effect of what would otherwise be substantial evidence of continued ability to work by his own testimony as to his condition, the Secretary would rarely if ever be justified in denying benefits."[15] The regulations under the Social Security Act specifically provide that "[s]tatements of the applicant, including his own description of his impairment (symptoms) are, alone, insufficient to establish the presence of a physical or mental impairment."[16]

In the instant case, even apart from the lack of significant medical opinion supporting plaintiff's complaints, the record contains substantial evidence to support a determination that plaintiff's testimony was not entirely reliable.[17] Despite his claim that his prior positions were too physically demanding, plaintiff admits that his blackouts or seizures are under control and nowhere states how or why he is prevented by them from resuming work. Plaintiff's contention that these blackouts and their attendant headaches are so disabling as to prevent work is challenged by his consistent omission of this condition in his complaints to his physicians. And although plaintiff denied any alcohol problem at the hearing and with Dr. Fosco, that statement is at

**9.** *Ber v. Celebrezze,* 332 F.2d 293, 299 (2d Cir. 1964).

**10.** *Kagan v. Weinberger,* 383 F.Supp. 1223, 1225 (D.Kan.1974). *See Woods v. Finch,* 428 F.2d 469 (3d Cir. 1970).

**11.** *See Kagan v. Weinberger,* 383 F.Supp. 1223, 1225–26 (D.Kan.1974).

**12.** *Wrennick v. Secretary of HEW,* 441 F.Supp. 482 (S.D.N.Y.1977); *Deyo v. Weinberger,* 406 F.Supp. 968, 973 (S.D.N.Y.1975); *see, e. g., Cutler v. Weinberger,* 516 F.2d 1282, 1286–87 (2d Cir. 1975); *Robinson v. Richardson,* 360 F.Supp. 243, 248 (E.D.N.Y.1973); *Taylor v. Gardner,* 297 F.Supp. 743, 746 (N.D.Ill.1969).

**13.** *See* cases cited in note 12 *supra.*

**14.** *See* 20 C.F.R. § 404.1501(c) (1977); *Waters v. Gardner,* 452 F.2d 855, 857 (9th Cir. 1971);

*Deyo v. Weinberger,* 406 F.Supp. 968, 973 (S.D. N.Y.1975).

**15.** *Reyes Robles v. Finch,* 409 F.2d 84, 87 (1st Cir. 1969).

**16.** 20 C.F.R. § 404.1501(c) (1977).

**17.** *See Deyo v. Weinberger,* 406 F.Supp. 968, 973 (S.D.N.Y.1975). The determination of credibility made by the ALJ is, of course, entitled to great weight. *See Alvardo v. Weinberger,* 511 F.2d 1046, 1049 (1st Cir. 1975); *Kirby v. Gardner,* 369 F.2d 302, 304 (10th Cir. 1966); *Wrennick v. Secretary of HEW,* 441 F.Supp. 482 (S.D.N.Y.1977); *Good v. Weinberger,* 389 F.Supp. 350, 356 (W.D.Pa.1975); *Ketron v. Finch,* 340 F.Supp. 845, 850–51 (W.D.Va.1972).

odds with the conclusions reached at Beekman and the Featherbed clinic and with plaintiff's own statement at Cumberland Hospital.

Indeed, perhaps the only question of any substance in this review might be whether sufficient attention was paid to plaintiff's alcoholic condition, given its recurrent presence in the medical reports.[18] It appears that alcoholism alone may be a disabling disease within the statute's meaning.[19] "If the disease progresses to the point where there is recognizable mental or physical deterioration, moral values should not prevent a finding of permanent disability in a proper case despite the etiology of the mental disorder." [20]

Of course, the simple answer is that plaintiff did not raise this as a disability and indeed denies any drinking problem.[21] But more importantly, the medical evidence does not support any claim that might be made of plaintiff's disability due to alcohol. The regulations for determining disability due to alcohol provide:

> The presence of a condition diagnosed or defined as addiction to alcohol or drugs will not, by itself, be the basis for a finding that an individual is or is not under a disability. As with any other condition, the determination as to disability in such instances shall be based on symptoms, signs, and laboratory findings.[22]

As indicated above, plaintiff cannot be said to be physically disabled. As for any mental disorder, Dr. Fosco, a psychiatrist as well as a neurologist, interviewed plaintiff, who answered all questions relevantly and coherently. The doctor concluded that plaintiff was well oriented, had no specific delusions or hallucinations and exhibited mild depression. Although some sort of psychotherapy was suggested, there was no conclusion that plaintiff's mental state would preclude him from working. Similarly, despite repeated reference to anxiety in plaintiff's medical records, the reviewing physician concluded that the anxiety was minimal and that plaintiff could work. In sum, even if plaintiff had pressed a claim of disability due to alcohol, it would be lacking in substance.

The ALJ held that plaintiff "has complaints due to a seizure condition, osteoarthritis of the spine, injuries to his ribs and lung from a car accident [23] and psychoneurosis," but that "[t]hese conditions were not severe enough to preclude substantial gainful activity for a period of twelve months or more in his prior occupations as offset printing machine operator and superintendent of a building in a lighter duty capacity." The conclusion resulting therefrom, that claimant is not disabled, is supported by substantial evidence and the motion to dismiss the complaint is therefore granted.

Submit order on notice.

---

**18.** See, e. g., Adams v. Weinberger, 548 F.2d 239 (8th Cir. 1977); Griffis v. Weinberger, 509 F.2d 837 (9th Cir. 1975); Lewis v. Celebrezze, 359 F.2d 398 (4th Cir. 1966); Badichek v. Secretary of HEW, 374 F.Supp. 940 (E.D.N.Y. 1974); cf. Wyper v. Providence Washington Ins. Co., 533 F.2d 57, 61 (2d Cir. 1976). Indeed, the resident physician admitting plaintiff at Beekman's emergency room after the second accident was unable to obtain plaintiff's history because he was under the influence of alcohol.

**19.** Adams v. Weinberger, 548 F.2d 239 (8th Cir. 1977); Griffis v. Weinberger, 509 F.2d 837 (9th Cir. 1975); Badichek v. Secretary of HEW, 374 F.Supp. 940 (E.D.N.Y.1974).

**20.** Wyper v. Providence Washington Ins. Co., 533 F.2d 57, 61 (2d Cir. 1976).

**21.** See Osborne v. Cohen, 409 F.2d 37, 39 (6th Cir. 1969); Chunco v. Weinberger, 405 F.Supp. 1159 (S.D.W.Va.1975). But see Adams v. Weinberger, 548 F.2d 239, 245 (8th Cir. 1977) ("finding of no disability cannot rest on the testimony of [claimant], admittedly a chronic alcoholic, that 'the quitting drinking, there is no great problem there. Well, I enjoy it, and I don't—I don't think the beer hurts me, particularly.' ").

**22.** 20 C.F.R. § 404.1506(d) (1977); Adams v. Weinberger, 548 F.2d 239, 242 (8th Cir. 1977).

**23.** The ALJ recognized that these injuries precluded plaintiff's return to heavy manual labor. The injuries were not cited by plaintiff as grounds for his disability and the medical records clearly show that plaintiff has substantially recovered.