Ramona PEREZ, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

No. 93 Civ. 7262 (JFK).

United States District Court,
S.D. New York.

April 7, 1995.

**220**

Guilene Cherenfant, of counsel, Bronx Legal Services, Bronx, NY, for plaintiff.

Mary Jo White, U.S. Atty. for the S.D. of N.Y., New York City (Linda A. Riffkin, Asst. U.S. Atty., of counsel), for defendant.

## OPINION AND ORDER

KEENAN, District Judge:

Before the Court is Plaintiff's motion for judgment on the pleadings, pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3) of the Social Security Act (the "Act"), to reverse the administrative decision of the Secretary of Health and Human Services, or in the alternative, to remand the case to the Secretary for further evidentiary proceedings. Also before the Court is defendant's cross-motion for judgment on the pleadings affirming the Secretary's decision and dismissing the complaint. For the reasons that follow, Plaintiff's motion for judgment on the pleadings is denied. Defendant's cross-motion is granted.

## BACKGROUND

### A.  Current Status of Case

Plaintiff Ramona Perez, now 49 years of age, is appealing a decision by the Secretary of Health and Human Services ("Secretary"), that partially granted Plaintiff's application for Social Security Income ("SSI") under Title XVI and Social Security Disability ("SSD") under Title II of the Social Security Act. Plaintiff initially applied for disability insurance on March 15, 1990. That application was denied on May 29, 1990. After that

denial Plaintiff sought no additional administrative review. Plaintiff then filed for SSD and SSI benefits on October 11, 1991 which were both denied initially and on reconsideration. Subsequently, Plaintiff requested a hearing to review the applications which was held on December 16, 1992 before an Administrative Law Judge ("ALJ").

On January 28, 1993 the ALJ determined that as of February 13, 1992, Plaintiff was under a disability as defined in 20 C.F.R. sections 404.1520(f) and 416.920(f) of the Social Security Act for the purpose of receiving SSI benefits, but that Plaintiff was not disabled prior to that date. Consequently, the ALJ determined that Plaintiff is not entitled to receive SSD benefits because she was not disabled on or prior to December 31, 1989, the date on which her insured status expired.

In order to receive SSD, Plaintiff must prove she was disabled on or prior to December 31, 1989, the expiration date of her last insured status. See Arnone v. Bowen, 882 F.2d 34, 38 (2d Cir.1989). Plaintiff may not use evidence of a disability that developed after the expiration date in order to qualify for benefits.[1] However, qualification for SSI benefits is not related to the date of her last insurance, but will not be granted for any months prior to October 1991, the month in which she filed her application. See 20 C.F.R. §§ 416.330 and 416.355. The Appeals Council rejected Plaintiff's request for review on August 13, 1993. Upon that rejection, the ALJ's decision became the final decision of the Secretary and therefore this action is ripe for review.

### B.  Medical Evidence Prior to February 13, 1992

The only medical evidence presented to the ALJ for the period prior to December 31, 1991 was a report from Plaintiff's treating physician Dr. Andre Celestin dated May 16, 1990, covering the period of January 17, 1988 through March 19, 1990. The report indicated that during that period Dr. Celestin saw Plaintiff eleven times for arthritis of the

---

**1.**  Plaintiff may only use evidence of a disability after the date of expiration of her insured status if she can prove the disability was continuous

from the period before expiration. See Arnone, 882 F.2d at 38.

knees. He noted that Plaintiff had tenderness in the knees, but no heat or effusion; that she had a normal range of bilateral motion; and that her gait and station were completely normal, thus precluding assistance of an orthotic device. Dr. Celestin also acknowledged that Plaintiff's arthritic pain was aggravated by her weight gain from 176 pounds to 190 pounds which occurred between January of 1988 and May of 1990.

Plaintiff also underwent a series of three tests, including a CAT scan, from February 25, 1991 to August 26, 1991 ordered by Dr. Raphael P. Gonzalez.[2] The CAT scan dated February 25, 1991 showed good visualization of the vertebral bodies which were all within normal limits. All other discs were normal except for a right sided disc herniation at disc level C4–5.

On August 24, 1991 an MRI indicated that there were minimal centrally bulging discs at the levels of C4–5, C5–6 and C6–7. There was no evidence of frank disc herniation, nerve root impingement, spinal stenosis, fracture, dislocation, neoplasm, inflammatory disease, hematoma, white matter plaque or congenital abnormality. The cervical spinal cord was also intact. The final test, an MRI dated August 26, 1991, found disc degeneration at the disc levels of T12–L1, L1–2, L3–4, L4–5 and L5–S1. All other evidence indicated no abnormalities.

## C. *Medical Evidence After February 12, 1992*

On February 20, 1992 Dr. Agustin Sanchez reported that he examined Plaintiff on February 13, 1992 for complaints of cervical thorax and lower back pain, right hand numbness and decreased strength. Dr. Sanchez found that she had knee flexion-extension of 110 degrees on the right and 120 degrees on the left out of 120 degrees. Lateral flexion of her cervical spine was ten degrees to the right and fifteen to the left out of a possible forty-five degrees. Flexion of Plaintiff's cervical region was thirty degrees and extension was forty-five degrees out of forty-five degrees. Plaintiff's rotation of the cervical region was thirty degrees to the right and thirty-five degrees to the left out of forty-five

degrees. Dr. Sanchez found Plaintiff's flexion-extension of the lumbar region was sixty degrees out of ninety degrees, and lateral flexion was ten degrees on the right and fifteen degrees on the left out of a possible thirty degrees. Dr. Sanchez concluded that Plaintiff was limited to occasionally carrying less than five pounds and frequently carrying less than two pounds. Plaintiff was unable to stand or walk for over two hours per day and to sit less than six hours per day. Finally, Dr. Sanchez found she had limited ability to push and pull. He prescribed Naprosyn, ultrasound treatments and hot pack treatments.

On May 1, 1992, Plaintiff was examined by Dr. Mario Mancheno who found she walked with a limp, favoring the left lower extremity with a cane. He observed that despite some difficulty in toe-heel walking, she did not need assistance of a cane. She had no difficulty getting on the examination table or lying down. An examination of her neck revealed some tenderness from C4–7 and mild paraspinal muscle spasm bilaterally. She had no gross deformity, and could flex 20 degrees, extend to 20 degrees, bend laterally to thirty-five degrees on each side and rotate to thirty degrees on each side. An examination of Plaintiff's upper extremities revealed full range of motion in both hands and no impairment of fine manipulation. Tests of her lower extremities revealed full range of motion in her hips with negative straight leg raises bilaterally. She had scars of arthroscopic surgery on her left knee with slight stiffness but no acute inflammation. She could flex each knee to 140 degrees, with stiffness and slight crepitation, or cracking, of the right knee. Her ankle joints, knee and ankle jerks were all normal. The muscle power and tone of the lower extremities was 4 + due to slight atrophy of the muscles of both thighs. She had normal superficial touch and temperature. Plaintiff had a full range of motion of the lumbosacral spine without tenderness or deformity. A neurological examination revealed no sensory, motor or reflex abnormalities. X-rays of her left knee revealed mild to moderate osteode-

---

**2.** Dr. Gonzalez did not submit a report.

generative changes. An X-ray of the lumbosacral spine showed scoliotic deformity.

Dr. Mancheno's diagnosis of Plaintiff was "rule out discogenic disorder of the cervical spine; status post surgery of the left knee and arthritis of the right knee." He found she could do light lifting and carrying, moderate standing and walking, light pushing and pulling and sit without restrictions.

Dr. M.S. El Dakkai submitted a report dated November 12, 1992 of Plaintiff's residual functional capacity regarding disorders of the spine. Dr. Dakkai found that Plaintiff had limited right neck rotation and decreased extension. Plaintiff had radiculopathy along disc levels C4–5–6 and her right arm as well as radiculopathy in both legs. Plaintiff had tingling and numbness in her right arm and right leg. Dr. El Dakkai indicated that Plaintiff had a myelogram of the cervical spine that revealed a herniated disc at C4–5 and a bulging disc at the lumbosacral spine. Plaintiff also under went arthroscopic surgery on both knees.

Dr. El Dakkai diagnosed Plaintiff with disc disease at C4–5–6, and found this impairment could last up to at least twelve months. He recorded that Plaintiff could continuously stand for up to two hours, sit continuously sit for up to two hours, and alternatively sit and stand for up to three hours. Plaintiff would have to lie down at sometime during the day and could not walk further than two blocks without stopping, and lift and carry a maximum of ten pounds. Dr. Dakkai indicated without explanation that Plaintiff had problems doing one or more of the following; bending, squatting, kneeling or turning parts of her body. Finally, he indicated that Plaintiff could travel alone by bus or by subway and that she did not suffer from an impairment that limited her physical/mental ability to do basic work activities.

### D. *Medical Evidence Submitted After Close of Administrative Record*

Plaintiff asserts that two medical reports considered by the Appeals Council in deciding not to grant administrative review of the ALJ's determination, but not submitted to the ALJ, should also be considered by this Court in reviewing the decision of the Secretary.

Plaintiff argues the importance of one report, dated April 21, 1993, compiled by Dr. Celestin, Plaintiff's treating physician, regarding treatment for arthritis of the knees from 1988 to 1990. This record indicated that due to Plaintiff's obesity, she had severe pain in the knees that caused difficulty in walking. X-rays of her knees taken at an early stage of her treatment showed mild erosion of the articular cartilage, but an X-ray taken in March, 1990, showed demineralization of both bones consistent with arthritis. She was then diagnosed with severe knee arthritis aggravated by her weight. Her response to medication was poor, due to a lesion of the articular area which does not respond well to medication.

At the time of treatment, Dr. Celestin's prognosis was reserved because Plaintiff's disease was related to her ability to lose weight. He concluded that Plaintiff could continuously stand for up to one hour, sit continuously for up to five hours, and alternately sit or stand at one time for up to one hour. She had no problem bending, squatting, kneeling or turning parts of her body or using her extremities in a normal range of motion. Plaintiff had no problems grasping, pushing, pulling or doing fine manipulations with either hand. Plaintiff could lift up to fifty pounds, carry up to twenty pounds, walk up to two blocks.

The second report was given only cursory treatment by Plaintiff in her papers. This report was submitted by Dr. Sanchez and was dated April 16, 1993. It concerned treatment of Plaintiff on October 17, 1991 and February 13, 1992 for cervical and lumbar pain and left knee arthritis. The report did not distinguish between Plaintiff's diagnosis on each respective date, and a report of Dr. Sanchez dated February 13, 1992 was used by the ALJ to find Plaintiff disabled as of that date.

### DISCUSSION

#### A. *Standard of Review*

■ 42 U.S.C. section 405(g), as incorporated by 42 U.S.C. 1320a–7(f), establishes the

standard for judicial review of the determination by the Secretary to deny benefits under the Social Security Act. 42 U.S.C. section 405(g) provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." Accordingly, the Secretary's decision must be upheld if the Court finds there was substantial evidence in support of the Secretary's determination and that the proper legal standards were applied. *See Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991); *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir.1990). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). The Secretary's determination will stand as long as there is substantial evidence on the record, even if the record contains evidence that could have supported a different conclusion. *See Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988); *Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir.1982). Therefore, the only issue before this Court is whether the Secretary's determination is supported by substantial evidence in the record.

■ The Secretary determined that the Plaintiff was eligible for Social Security Income as of February 13, 1992, the date on which the evidence showed Plaintiff became disabled. The Secretary concluded that because Plaintiff was not disabled before February 13, 1992, Plaintiff is not entitled to SSD or SSI benefits for any period preceding that date.

**B.  *Standards for Determining Disability***

■ The definition of "disabled" is the same for both Title II SSD and Title XVI SSI benefits. *Compare* 42 U.S.C. § 423(d)(2)(A) *with* 42 U.S.C. § 1382c(a)(3). "Disability" is defined in pertinent part as:

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

■ The Secretary follows a five-step evaluation process for adjudication of disability claims. *See* 20 C.F.R. § 416.920. The Second Circuit sums that procedure up as follows:

"First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform."

*Rivera v. Schweiker,* 717 F.2d 719, 722 (2d Cir.1983) (quoting *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982)). The claimant bears the burden of proof as to steps one through four.

■ If the claimant successfully proves that he cannot return to his prior type of work, the burden shifts and the Secretary must then consider if there is a form of work claimant can perform. *See Carroll v. Secretary of Health and Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983). In making this determination, the Secretary should consider ob-

jective medical evidence, opinions of examining doctors, subjective evidence of pain and disability, and claimant's age, education and work history. *See Mongeur v. Heckler,* 722 F.2d 1033, 1037 (2d Cir.1983); *Carroll,* 705 F.2d at 642.

■ The Secretary can meet her burden of showing that the applicant can perform other work by applying these factors under the Tables laid out in the Medical Vocation Guidelines. *See* 20 C.F.R. § 404, Subpt. P, App. 2; *Heckler v. Campbell,* 461 U.S. 458, 467–68, 103 S.Ct. 1952, 1957–58, 76 L.Ed.2d 66 (1983). The Tables reflect the existence of other work in the national economy for individuals whose residual functional capacity limits them to sustained work at different levels—medium, light, and sedentary. Light work involves lifting as much as twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. *See* Social Security Ruling 83–10. To perform the full range of light work, a person must be able to work on his feet for up to two-thirds of the work day. *Id.* In addition, the person must also be able to sit most of a work day and operate arm/hand or leg/foot controls. *Id.*

Sedentary work involves lifting no more than ten pounds at a time and occasionally (no more than one-third of the work day) lifting or carrying light objects. *Id.* Sedentary work generally involves up to two hours of standing or walking in an eight-hour work day. *Id.*

## C. *The Evidence Supporting the Secretary's Determination*

The ALJ followed the five-step evaluation procedure articulated by the Second Circuit. Plaintiff does not contest the ALJ's finding that she was disabled as of February 13, 1992. The ALJ determined that as of that date Plaintiff had a severe herniated disk in the cervical spine with radiculitis, degenerative disc disease in the theriaclumbar spine and meniscus in both knees. Although "she does not have an impairment or combination of impairments listed in, or medically equal

to one listed in 20 C.F.R. Part 404, subpt. P, Regulations No. 4," it reduces Plaintiff's residual functional capacity to perform her past relevant work as a sewing machine operator (light) or as a taxi-driver (medium), as well as compromises her ability to perform the full range of sedentary work. *See* 20 C.F.R. § 404.1569; Pt. 404, Subpt. P, App. 2, Tables 1–3.

The ALJ also determined that prior to February 13, 1992, Plaintiff was not disabled because her knee and back impairments did not preclude her from performing the full range of sedentary and some light work activities. The ALJ concluded that Plaintiff had the residual functional capacity to perform the physical exertion requirements of sedentary or light work except for work involving sitting or standing for prolonged periods of time, lifting or carrying more than ten pounds, and work involving fine manipulations. *See* 20 C.F.R. § 404.1545; § 416.945. Therefore, prior to February 13, 1992, Plaintiff was able to return to her past relevant work as a sewing machine operator and could perform the full range of sedentary work activities. *See* 20 C.F.R. § 404.1567(a) and (b).

Plaintiff argues that she was disabled prior to February 13, 1992, and is therefore entitled to receive SSD benefits.[3] She contends that the ALJ's determination was not supported by medical evidence of record, arguing specifically that the ALJ failed to accord sufficient weight to the records of her treating physician, Dr. Andre Celestin. The issue for this Court is whether there is substantial evidence on the record to support the ALJ's finding that Plaintiff was not disabled prior to February 13, 1992.

Temporally, the first evidence relevant to the ALJ's determination was the medical report of Dr. Celestin for the period of January 17, 1988 through March 19, 1990. This report indicated that Plaintiff's range of motion of the knees was normal. Her gait and station were also normal, precluding the need for an orthotic device. Plaintiff's assertion

---

**3.** In order to be eligible for SSD benefits, Plaintiff must prove that she was disabled prior to December 31, 1989, the date her last period of insured status expired. *See Arnone,* 882 F.2d at 38.

that insufficient weight was accorded to the report of Dr. Celestin works to her disfavor, not to her advantage.

■ The Second Circuit recognizes that substantial weight must be accorded to the evaluation of a treating physician. This "treating physicians rule" requires that in evaluating disability in SSI cases:

"The treating source's opinion on the subject of medical disability—i.e., diagnosis and nature and degree of impairment—is (1) binding on the fact-finder unless contradicted by substantial evidence and (2) entitled to some extra weight, even if contradicted by substantial evidence...."

*Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir. 1988). Here, Dr. Celestin's report did not indicate Plaintiff's condition came close to the qualifications of an impairment listed in 20 C.F.R., Pt. 404, Subpt. P., App. 1—Active Rheumatoid Arthritis and Other Inflammatory Arthritis. To the contrary, there was no marked limitation of motion or abnormal motion of the knee and no indication of gross anatomical deformity at the time covered by Dr. Celestin's report.

■ Furthermore, Plaintiff's subjective complaints of pain reported to Dr. Celestin must be evaluated "in light of medical findings and other evidence...." *Gallagher v. Schweiker,* 697 F.2d 82, 84 (2d Cir.1983). Her complaints of pain are not supported by the findings of her treating physician. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Dumas v. Schweiker,* 712 F.2d 1545, 1553 (2d Cir.1983).

Plaintiff also urges this Court to consider medical records from Dr. Celestin and Dr. Sanchez not presented during the hearing before the ALJ. She contends that because the Appeals Council considered this evidence in deciding to deny review of the ALJ's determination, this Court should also consider the evidence in reviewing the ALJ's determination. The Second Circuit has yet to decide whether evidence not presented before the ALJ should be considered by the reviewing court.

■ This Court adopts the view of the Seventh Circuit in *Eads v. Secretary of Department of Health and Human Services* 983 F.2d 815, 818 (7th Cir.1993), in which that Court held that courts cannot reverse the decision of the ALJ on the basis of evidence submitted only to the Appeals Council. The Court then reasoned correctly that use of new evidence to reverse the ALJ's decision to deny benefits

"would change our role from that of a reviewing court to that of an administrative law judge, required to sift and weigh evidence in the first instance rather than limited as we are to reviewing evidentiary determinations made by the front-line fact-finder."

*Id., citing Ehrhart v. Secretary,* 969 F.2d 534, 538 (7th Cir.1992).

■ Applying the Seventh Circuit rule, it is clear that this Court need not consider any evidence not considered by the ALJ. Applying this rule is consistent with the standard of review in the Second Circuit—whether the findings regarding benefits are "supported by substantial evidence." The standard is not whether there existed any other available evidence to consider.

Moreover, even if this Court considered the additional records of Dr. Celestin, they offer no support for Plaintiff's position. In these reports Dr. Celestin acknowledged Plaintiff's complaint of pain in the knees, and attributed this condition to her obesity. However, the reports clearly indicate that she could continuously stand for up to one hour, sit for up to five hours, had no problem bending, squatting, kneeling or turning parts of her body, had normal range of motion in her extremities, and could lift up to fifty pounds and carry up to twenty pounds. These findings demonstrate that Plaintiff was capable of performing both some light work and the full range of sedentary work. *See* 20 C.F.R. § 404.1567(a) and (b).

Additionally, even if this Court reviewed the report by Dr. Sanchez, it offers little support for Plaintiff's position. This report covers Plaintiff's treatment on October 17, 1991 and February 13, 1992, but fails to distinguish her condition on the earlier date from that of the latter. Dr. Sanchez was not Plaintiff's treating physician for the period prior to the date determined as the onset of her disability so even if his prognosis on

October 17, 1991 could be determined, it would be accorded little weight. *See Gallagher*, 697 F.2d at 84. Furthermore, the ALJ already used a report by Dr. Sanchez dated February 13, 1992 to find Plaintiff disabled, thus refuting the argument that the absence of this report could have lead the ALJ to a different conclusion.

The ALJ also determined that the medical records regarding Plaintiff's treatment for disk herniation did not rise to the level of a medical impairment before February 13, 1992. The record indicates that a CAT scan of Plaintiff's spine on February 25, 1991 revealed disc herniation, an MRI on August 24, 1991 revealed no evidence of frank disk herniation and minimal centrally bulging discs at the levels of C4–5, C5–6 and C6–7, and an MRI on August 26, 1991 showed no evidence of disc herniation and disc degeneration at the levels of T–12–L1, L1–2, L3–4, L4–5 and L5–S1. However there is no evidence on the record that these findings were in any way disabling.

■ To be disabled within the meaning of the Act, it is not sufficient that Plaintiff show the mere presence of an impairment, but that the impairment prevents her from returning to work. *See Berry v. Schweiker*, 675 F.2d 464 (2d Cir.1982). Plaintiff must prove that the impairment caused functional limitations that precluded her from performing substantial gainful activity in order to be entitled to benefits. *See Mongeur*, 722 F.2d at 1037. Plaintiff offers no evidence that the disc herniation caused an impairment as defined under pt. 404 P, App. 1 B "Disorders of the Spine". Disorders include limitation of movement of the spine, motor and sensory abnormalities, and muscle spasm.

■ Plaintiff did not seek treatment for impairment of the cervical spine until February 13, 1992, the date on which the ALJ found Plaintiff disabled under the Act. In fact, Plaintiff's only treating physician prior to the date her insured status expired, Dr. Celestin, did not indicate any problems with Plaintiff's spine from 1988 to 1990. The Sec-

retary may rely on what is absent from the record as well as what is present. *See Dumas*, 712 F.2d at 1553; *Fields v. Secretary of Health, Ed. and Welfare*, 444 F.Supp. 1003, 1006–07 (S.D.N.Y.1977).

Moreover, Plaintiff saw a physician, Dr. Sanchez, on February 13, 1992, who indicated that Plaintiff's spinal problems developed as a result of her car accident on November 12, 1990, close to one year after the expiration of her insured status. In fact, it was not until September 20, 1992, seven months after she was found disabled, that Plaintiff was prescribed medication for back pain.

The foregoing evidence satisfies the requirement that the Secretary had substantial evidence on the record to conclude Plaintiff could perform the full range of sedentary work and some light work until the date of disability, February 13, 1992. Despite her complaints of a back and knee impairment, there is substantial evidence that Plaintiff could return to her job as a sewing machine operator.[4] Moreover, Plaintiff conceded in her testimony that she stopped working as a taxi driver, an occupation designated as "medium" by the Occupational Guidelines, because her car broke down. She also indicated that she stopped work as a sewing machine operator, not because of back or knee impairments, but due to poor eyesight. However, Dr. Celestin indicated in his report that Plaintiff's eyesight was normal.

According to step five of the five-step evaluation process, even if Plaintiff did have an impairment, she is not disabled if she can perform work other than that of a sewing machine operator. *See Rivera*, 717 F.2d at 722. The medical evidence of record also comports with the finding that Plaintiff could perform the full range of sedentary work prior to February 13, 1992. *See Medical Vocational Guidelines*, Pt. 404, Subpt. P, App. 2, § 201.00; 20 C.F.R. § 404.1567(a). Consideration of Plaintiff's age (now 49), her ability to communicate in English and her previous work experience leads to a finding of full capacity to perform sedentary work.

---

4. Sewing machine operator is light work that requires standing up to six hours, lifting up to twenty pounds with frequent lifting and carrying of up to ten pounds. *See* Appendix 2, subpt. P of

Medical Vocational Guidelines. Dr. Celestin indicated Plaintiff could stand up to five hours, carry up to twenty pounds and lift up to 50 pounds.

This Court finds that the Secretary's determination that prior to February 13, 1992 Plaintiff had residual functional capacity to perform some light work and the full range of sedentary work is supported by substantial evidence. Furthermore, Plaintiff failed to prove that her condition prior to the expiration of her insured status is the same condition that rendered her disabled as of February 13, 1992. As a result, the Secretary's determination that Plaintiff was not disabled prior to February 13, 1992 shall not be overturned by this Court. Therefore, Plaintiff is not entitled to SSD benefits.

### CONCLUSION

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings reversing the administrative decision of the Secretary of Health and Human Services pursuant to Fed.R.Civ.P. 12(c), is denied. Defendant's cross-motion for judgment on the pleadings affirming the Secretary's decision and dismissing the complaint is granted. The Court orders this case closed and directs the Clerk of the Court to remove it from the Court's active docket.

**SO ORDERED.**