**Edward Nelson HAMM, Plaintiff,**

**v.**

**Elliott RICHARDSON, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

**No. EC 7036–K.**

United States District Court,
N. D. Mississippi, E. D.

March 16, 1971.

John C. Ross, Jr., Corinth, Miss., for plaintiff.

Falton O. Mason, Jr., Asst. U. S. Atty., Oxford, Miss., for defendant.

## MEMORANDUM OPINION

KEADY, Chief Judge.

Plaintiff brought this suit under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Secretary of Health, Education and Welfare (HEW) denying his claims for a period of disability under 42 U.S.C. § 416(i) and for disability insurance benefits under 42 U.S.C. § 423.[1]  Plaintiff has fully

---

1.  42 U.S.C. § 405(g):
    "Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.  Such action shall be brought in the district court of the United States for the judicial district

in which the plaintiff resides or has his principal place of business, * * *."
The 1967 amendments to the Social Security Act (Pub.L. 90–248, 81 Stat. 821), which are applicable here, define "disability" under both § 416(i) and § 423 (d), (1), (A) in the same way:
"The term 'disability' means—inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

exhausted his administrative remedies. Following disallowance of his original application by the Bureau of Disability Insurance, a hearing was held before a Hearing Examiner in Jackson, Mississippi, at which plaintiff was present and testified, but was not represented by counsel. After the Hearing Examiner had allowed his claim without entry of reasons for his decision, the Appeals Council of the Social Security Administration, on its own motion, reopened the case, reviewed the file and disallowed plaintiff's claim. The determination by the Appeals Council was a "final decision" reviewable by this court under § 405(g).

Both parties have moved for summary judgment based on the record made below, and following the submission of memorandum briefs the case is now before the court for decision. The principal issue is whether there was substantial evidence in the record to support the Secretary's finding that plaintiff was not disabled under §§ 416 and 423. If there was substantial evidence for the HEW finding, the law requires us to affirm.[2] Substantial evidence was defined by Mr. Justice Blackmun, then a Circuit Judge, in Easttam v. Secretary of HEW, 364 F.2d 509 (8 Cir. 1966), as follows:

"[S]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (at p. 511). See Cohen v. Perales, 412 F.2d 44 (5 Cir. 1969).

The initial burden of proof in this case rests upon claimant, who must establish that he has a medically verifiable impairment which disables him from performing the type of work he has performed in the past. If he makes such a showing, the burden of proof then shifts to the Secretary to show that there are other categories of substantial gainful jobs which a person of his age and experience could perform.[3]

At the outset, we note that the Hearing Examiner found, and defendant admits, that plaintiff was eligible for benefits insofar as the special earnings requirement of 42 U.S.C. § 416(i) (3) is concerned, since he had employment coverage for at least 20 of the last 40 quarters immediately preceding the alleged disability. Although the record contains medical evidence and statements by plaintiff as to several ailments and injuries which have afflicted him in the past, the thrust of his disability claim appears to rest upon some form of arthritis, as he acknowledged.

Plaintiff is a 48 year-old white male who completed eight years of school, dropping out at age sixteen to work in the asphalt mines of Alabama for roughly two years. Drafted into the military service shortly thereafter, plaintiff served as a cook with the U. S. Air Force in Berlin, Germany, where he received no service-connected injuries other than a broken leg, which has no relation to the disabilities claimed here. Upon leaving military service, plaintiff farmed for a couple of years, operated a boat during the laying of a pipeline across the Tennessee River, served as a time checker of TVA equipment, and worked as a rod man on a surveying crew. Thereafter, he attended Bricklayer School at East Central Junior College in Decatur, Mississippi, completing the two-year course in one year, and worked from 1958 until the onset of his alleged disability as a self-employed, non-union bricklayer, also laying some block, stone and tile. According to the testimony of plaintiff and his wife, who were the only witnesses personally appearing before the Hearing Examiner,

or which has lasted or can be expected to last for a continuous period of not less than 12 months."

2. Rome v. Finch, 409 F.2d 1329 (5 Cir. 1969); Byrd v. Gardner, 358 F.2d 291 (5 Cir. 1966).

3. Mullins v. Cohen, 408 F.2d 39 (6 Cir. 1969); Daniel v. Gardner, 390 F.2d 32 (5 Cir. 1968); Hicks v. Gardner, 393 F.2d 299 (4 Cir. 1968); Gentile v. Gardner, 298 F.Supp. 1401 (D.C.Pa.1969).

plaintiff worked as a bricklayer until about December 17, 1968, when pain in his hands, elbows and shoulders prevented him from gripping and lifting bricks and continuing his bricklaying work.

Except for lay testimony, all of the evidence concerning plaintiff's alleged disability was in the form of unsworn letters and medical records. There were four separate documents from plaintiff's personal physician, Dr. Harry Cosby, Jr., general practitioner of Iuka, Mississippi, asserting that plaintiff has been totally and permanently disabled at least since December 1968. The first document, a brief report prepared for submission to the Veterans Administration and dated May 22, 1968, stated that plaintiff had chronic rheumatoid arthritis with early deformity of arms, hands and elbows, concluding that he was then totally disabled. Dr. Cosby also submitted an HEW medical report form dated April 15, 1969, showing that he had treated plaintiff at irregular intervals from December 1968 to late February 1969 for pain, swelling, enlargement and deformity of the joints in plaintiff's back, hip, knees, ankles, arms and hands due to arthritis, for which he was given darvon, valium, indocin and other like drugs, with disappointing results. Dr. Cosby's report also showed that plaintiff's R.A. was positive and that the V. A. x-rays had shown early joint changes and osteoporosis. The diagnosis was chronic rheumatoid arthritis with early degenerative changes.

Dr. Cosby's third report, a one-sentence letter addressed "TO WHOM IT MAY CONCERN" and dated June 19, 1969, states the same basic conclusions, as does yet another letter, dated October 13, 1969, which added that plaintiff had not responded to the usual heat and cortisone treatments for arthritis, that he still had marked pain even without exercise, and that he was then unable to hold bricks in his hands. A further statement from Dr. Cosby to the same effect, dated January 24, 1970, was later considered by the Appeals Council, but was not before the Hearing Examiner.

Plaintiff also introduced into evidence a one-sentence letter dated October 13, 1969, from Dr. Bobby F. King, also a general practitioner of Iuka, Mississippi, certifying that he treated plaintiff for rheumatoid arthritis in May and June of 1966 with indocin, depomedrol and decogesic. Dr. King offered no conclusions as to the location, severity or duration of the ailment or its effect on plaintiff's ability to work.

A report from the Veterans Administration Hospital in Memphis, Tennessee dated April 8, 1969, and signed by Dr. A. J. Weber, III, was also admitted into evidence. That report showed that plaintiff first noted joint pain and swelling in his right knee more than fifteen years earlier, but recovered therefrom very quickly and had no recurrence until 1964, when he was admitted to the V. A. Hospital with pain and swelling in the right knee, diagnosed then as arthritis of undetermined etiology. The report further showed that in late 1968 plaintiff returned to the V. A. Hospital complaining of pain, swelling and tightness in both hands which prevented him from working more than two or three days at a time and which would subside only after three or four days of bed rest. The report noted that there were no present, objective findings of joint disease and also stated that the records of his previous admission also revealed none until approximately one week before his release. The report concluded that plaintiff was suffering from palindromic (recurrent) rheumatism aggravated by possible psychological problems and general tenseness and anxiety. The report recommended that he try to return to work, but foresaw that he might be incapacitated and unable to pursue his daily activities, and suggested that in such event he return for further study.

A subsequent V. A. report dated September 17, 1969, and signed by Dr. Nicholas Gotten revealed essentially similar conclusions, adding that plaintiff admitted to having a problem with alcohol, but that a psychiatric consultation had

resulted in a diagnosis of no mental illness. Dr. Gotten's final diagnosis was fibrositis with a very significant psychological overlay; suggested treatment was 5 mgs. of valium per day in conjunction with physical therapy.

The final medical report introduced into evidence, dated October 6, 1969, was that of Dr. William L. Wood, Jr., of Tupelo, Mississippi, a specialist in internal medicine. Dr. Wood's report, which was the most thorough study of plaintiff in the record, diagnosed plaintiff's ailment as very difficult to classify, but probably palindromic rheumatism with no joint deformities or other objective evidence of rheumatoid arthritis. The doctor stated that plaintiff could satisfactorily perform sedentary, moderate activity and could stand, sit, bend, stoop, squat, lift, walk and climb stairs, but that his *arthritic* condition interfered with his work activities and caused him pain when he moved and used the necessary joints. After these somewhat contradictory statements, the doctor concluded that he was in agreement with the V. A. report that a definite diagnosis could not be made without a full psychological evaluation or until the disease ran a more definite course. The essential basis of Dr. Wood's report, like that of the V. A., on whose report he admittedly relied in reaching his conclusions, was that plaintiff was obviously suffering, but that without objective, medical evidence of organic changes, he could not finally diagnose his condition.

We note that the Hearing Examiner himself remarked upon the swelling and whiteness over the knuckles of plaintiff's left hand (R. 60) and the unnatural way in which he turned his neck (R. 42). In his decision the Examiner stated that "In view of the Hearing Examiner's conclusion, which is wholly favorable to the claimant, recitation of the evidence is unnecessary."

In summary, although the record might technically be said to contain substantial evidence indicating both disability and a lack of disability, the record leaves much to be desired in terms of objective medical findings. It also contains unsupported innuendo as to mental and alcohol problems. Moreover, the only decision-maker who actually saw plaintiff and had the opportunity to question him and observe his reactions personally, rather than by merely reviewing a cold record, was the Hearing Examiner, who appeared so convinced of plaintiff's disability that he did not even review the evidence in rendering his decision.

From the foregoing it appears to the court that even if the Secretary's decision that plaintiff is not disabled might technically be considered to be supported by such substantial evidence as to require affirmance, we do not reach that question. In view of the inconclusive nature of the medical evidence against disability, which was not subject to cross-examination or other close scrutiny, and since plaintiff is a 48 year-old man with only an 8th grade education who was not represented by counsel at the administrative hearing and not even present when the Appeals Council reversed the Hearing Examiner's decision, it is the opinion of the court that the interests of justice would be best served by remanding this case to the Secretary, pursuant to this court's power under 42 U.S.C. § 405(g),[4] for the taking of additional evidence. This remand is not to be considered a reversal of the Secretary's decision nor a decision on substantiality of the evidence,

4. "The court shall, on motion of the Secretary made before he files his answer, remand the case to the Secretary for further action by the Secretary, and may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based."

but merely an opportunity for both the Secretary and the claimant to have a further hearing at which they may present whatever additional evidence they may wish on all questions raised by plaintiff's application. As said by Chief Judge Brown in Dodsworth v. Celebrezze, 349 F.2d 312 (5 Cir. 1965), at p. 315, in remanding this case:

> "'[W]e do not undertake to blueprint these proceedings on remand.' The present record may be used with both parties being free to supplement it, and a new decision should be reached on that total record, in light of the guidelines here laid down."

Decision on the Secretary's finding and the parties' motions for summary judgment will be withheld and the case remanded to the Secretary for the taking of additional evidence and new findings of fact and determination of plaintiff's claim by the Hearing Examiner.

This, 16th day of March, 1971.