**Hazel CUTLER, Appellant,**

v.

**Caspar WEINBERGER, as Secretary of the Department of Health, Education and Welfare of the United States of America, Appellee.**

No. 527, Docket 74–1093.

United States Court of Appeals, Second Circuit.

Argued April 3, 1975.

Decided May 13, 1975.

Toby B. Golick, Brooklyn Legal Services Corp., Brooklyn, N. Y. (John C. Gray, Jr., Brooklyn Legal Services Corp., Brooklyn, N. Y., and E. Judson Jennings, Legal Services for the Elderly Poor, New York City, on the brief), for appellant.

Paul Blankenstein, App. Section, Civ. Div., Dept. of Justice, Washington, D. C. (Carla A. Hills, Asst. Atty. Gen., New York City, David G. Trager, U. S. Atty., Eastern District of New York, and Morton Hollander, App. Section, Civ. Div., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before ANDERSON, MANSFIELD and OAKES, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

This is an action brought by Mrs. Hazel Cutler pursuant to § 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), for judicial review of a final decision of the Secretary of Health, Education and Welfare denying her application for period of disability benefits and disability insurance benefits under §§ 216(i) and 223 of the Act, respectively (42 U.S.C. §§ 416(i) and 423). This court concludes that in light of the facts in this case, the interests of justice are best served by a remand to the administrative law judge for a new hearing.

On August 10, 1971, Mrs. Cutler filed an application for disability insurance benefits under the Act, alleging that she had been unable to work since March, 1963, because of "diabetes mellitus, dizziness, forgetfulness, unsteady walk, [and] arthritis." The Social Security Administration denied her claim both initially and upon reconsideration. At Mrs. Cutler's request a hearing was held on October 6, 1972 before an administrative law judge. Mrs. Cutler appeared and was assisted by Frederick A. Santo, a representative of the New York City Department of Social Services, but she was not represented by counsel and no medical experts were called to testify. The administrative law judge, in a decision dated December 4, 1972, found that Mrs. Cutler, who last met the insured status requirements of the Act on June 30, 1970, failed to establish that as of that date she had a disability of sufficient severity to preclude her from engaging in substantial, gainful activity; and that on or before the expiration of her insured status she had the residual capacity to perform her usual occupation. Accordingly, he concluded that she was not disabled within the meaning of the Act.

After the Appeals Council denied further review on February 6, 1973, Mrs. Cutler instituted an action in the district court, which held, on January 7, 1974, that there was "ample substantial evidence to justify the administrative determination." This appeal followed.

The record reveals that Mrs. Cutler, who is in her late fifties and had borne four children, all of whom are married, has now been separated from her husband for over twenty years. Her formal schooling ended after completion of the third grade, and she is unable to read.

Mrs. Cutler worked for the greater part of her adult life as a domestic despite the amputation of three fingers from her right hand. From 1950 to 1960 she worked regularly in that capacity, but from 1960 to 1965 she was employed only sporadically, allegedly because of the disabling effects of diabetes mellitus, dizziness, forgetfulness, unsteady walk, and arthritis. She ceased working altogether in May, 1965, after she underwent a hysterectomy, the effects of which, in combination with her other ailments, she claims made her totally unable to continue her work as a domestic. Since 1967 she has received bi-weekly welfare payments of $109.50 from the Department of Social Services of the City of New York, which considers her totally and permanently disabled.

Mrs. Cutler stated at the hearing that she falls frequently, due to arthritis and weakness in her legs; that she is continuously dizzy although medicine prescribed by a doctor reduces its severity; and that she has back pain and intermittent stomach pain. She testified that she is able to care for her personal needs and to prepare meals, but that her married daughter does the housework.

In addition to Mrs. Cutler's own testimony, the medical evidence before the administrative law judge consisted primarily of medical reports, many of which were and still are illegible, detailing her treatment at Queens General Hospital, Long Island Jewish Hospital, and the New York Diabetes Association, Inc. during a period spanning the years 1965 to 1971. No expert medical testimony was sought or offered by either side. The administrative law judge evaluated the medical evidence as follows:

"The medical evidence reveals that the claimant has a history of diabetes mellitus which is under good control and

has not resulted in any manifestations of significant systemic impairments. Further, the evidence reveals this condition has not resulted in any diabetic complications. The lumbo-sacro spine x-ray was negative and the cervical spine x-ray was essentially negative. The orthopedic medical examiner found no orthopedic problems. The complaint of dizziness is not supported by the medical evidence. However, in any event, references have been made in medical record that the dizziness has improved. Further, the electroencephalogram and skull x-rays were reported as normal. The other conditions noted in the record are not incapacitating. The undersigned carefully observed the claimant throughout the course of the hearing. She did not appear in any pain, discomfort or distress; and she walked without difficulty."

Additional evidence not presented at the above hearing was submitted to the Appeals Council in connection with Mrs. Cutler's petition for review. This evidence consisted of the history sheets of the Department of Social Services of the City of New York pertaining to her case; her application to New York City for public assistance; and a written statement, dated January 3, 1973, by Mary Ann Deans, claimant's daughter, corroborating much of Mrs. Cutler's testimony regarding her physical ailments.

■ The general rule is that this court must sustain a final decision by the Secretary if it is supported by "substantial evidence" on the record as a whole. See Gold v. Secretary of Health, Education and Welfare, 463 F.2d 38, 41 (2 Cir. 1972); Franklin v. Secretary of Health, Education and Welfare, 393 F.2d 640 (2 Cir. 1968); 42 U.S.C. § 405(g). Although an examination of the record reveals that the Secretary's determination is at least technically supported by substantial evidence, this Circuit has observed that

the Social Security Act is remedial or beneficent in purpose, and, therefore, to be "broadly construed and liberally applied." Gold v. Secretary of Health, Education and Welfare, supra, at 41, quoting from Haberman v. Finch, 418 F.2d 664, 667 (2 Cir. 1969). Consistent with this view of the Act, courts have not hesitated to remand for the taking of additional evidence, on good cause shown, where relevant, probative, and available evidence was either not before the Secretary or was not explicitly weighed and considered by him, although such consideration was necessary to a just determination of a claimant's application. See, e. g., Hamm v. Richardson, 324 F.Supp. 328 (N.D.Miss.1971); Covo v. Gardner, 314 F.Supp. 894 (S.D.N.Y.1970). See also 42 U.S.C. § 405(g).[1] Cf. Gold v. Secretary of Health, Education and Welfare, supra, at 44.

■■ The present case suffered from infirmities of this kind. Many of the medical records included in the case are illegible, either because of the poor quality of the reproduction, the handwriting of the physician, or both. Under the circumstances this court has no way to determine whether the Secretary fully understood some of the medical reports before him. Where the medical records are crucial to the plaintiff's claim, illegibility of important evidentiary material has been held to warrant a remand for clarification and supplementation. See Machen v. Gardner, 319 F.Supp. 1243 (E.D.Tenn.1968). The record also fails clearly to indicate that the Secretary gave proper consideration to the effect upon her of the coexistent combination of illnesses from which she claimed to suffer. See Gold v. Secretary of Health, Education and Welfare, supra, at 42; Hicks v. Gardner, 393 F.2d 299, 302 (4 Cir. 1968); Dillon v. Celebrezze, 345 F.2d 753, 756–757 (4 Cir. 1965). The combination of Mrs. Cutler's diabetic condition, dizziness, obesity (she is approximately

1. Section 405(g) provides in relevant part:

"The court . . . may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or its decision, or both . . . ."

five feet tall and weighs 180 pounds), amputated fingers, back pain, etc., was apparently sufficient to satisfy the Department of Social Services, City of New York that she was totally and permanently disabled. While the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered. *See* Robinson v. Richardson, 360 F.Supp. 243, 249 (E.D. N.Y.1973); Zimbalist v. Richardson, 334 F.Supp. 1350, 1355 (E.D.N.Y.1971); Pendergraph v. Celebrezze, 255 F.Supp. 313, 321 (M.D.N.C.1966).

 Moreover, it is significant that Mrs. Cutler was not represented by counsel at the hearing before the administrative law judge. While hearings on disability claims are not adversary proceedings, Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), where the disability benefits claimant is unassisted by counsel, the administrative law judge has a duty " 'scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts . . . .' " Gold v. Secretary of Health, Education and Welfare, *supra*, at 43, quoting from Hennig v. Gardner, 276 F.Supp. 622, 624–625 (N.D.Tex.1967). *See also* Rosado v. Richardson, 372 F.Supp. 469 (D.Puerto Rico 1973); Erwin v. Secretary of Health, Education, and Welfare, 312 F.Supp. 179 (D.New Jersey 1970); Coyle v. Gardner, 298 F.Supp. 609

(D.Hawaii 1969). That duty was not met here. Given the illegibility of the medical records; the corroboration of Mrs. Cutler's subjective complaints of pain, weakness, dizziness and unsteadiness in a written report by a former employer; and the limited educational background of the claimant, it was incumbent upon the administrative law judge to emphasize the desirability of producing, and to afford an opportunity to produce expert testimony, as to her medical disabilities and their effect on her capacity to engage in any substantial, gainful work within the meaning of the Act. *See, e. g.,* Carrero v. United States Secretary of Health, Education and Welfare, 372 F.Supp. 474 (D.Puerto Rico 1973); Machen v. Gardner, *supra*; Staskel v. Gardner, 274 F.Supp. 861 (E.D.Pa.1967); Roberts v. Celebrezze, 239 F.Supp. 262 (E.D.N.Y.1965). *Cf.* Gold v. Secretary of Health, Education and Welfare, *supra*, at 42, n. 7. The absence of such testimony may well have led the administrative law judge to place undue emphasis on the failure of x-rays, electroencephalograms, and other "objective" clinical or laboratory tests conclusively to support Mrs. Cutler's claim that she suffered from such ailments as dizziness and peripheral neuropathy.[2] While a claimant must show that the physical or mental impairment by reason of which he claims to be disabled "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and

2. In the absence of expert medical opinion testimony, the administrative law judge throughout his decision placed considerable emphasis on the negative results of objective laboratory tests:

"Medical report from Queens General Hospital covering hospitalization from May 10, 1965 to June 10, 1965 and out patient treatment through June 30, 1969 indicated claimant underwent a total hysterectomy. Radiographic examination of May 19, 1965 of the chest was negative and abdomen revealed a pelvic mass most likely genital in origin. The electrocardiogram of May 20, 1965 was within normal limits. It was noted that claimant had an elevated blood sugar recently while in hospital and was on a diabetic diet. Radiographic examination of December 13, 1965 of the lumbosacral spine was negative; the orthopedic medical examiner

reported no orthopedic problem. No fracture, subluxation or other abnormality was seen. Radiographic examination of March 11, 1966 revealed normal morphology and function of the urinary tracts and there was no evidence of urinary calculi.

\* \* \* \* \* \*

Medical report from the Long Island Jewish Hospital covering period December 19, 1969 through January 8, 1971, revealed claimant complained of dizziness but an EEG and skull films were normal. Claimant was found to have diabetes mellitus. In January 1970, the diabetes was stated to be in good control and studies were negative. In February 1970 the impression was peripheral neuropathy possibly due to diabetes mellitus. X-ray of the cervical spine showed only minimal narrowing of C2 and C3 joint space. Blood pressure was normal."

laboratory diagnostic techniques," 42 U.S.C. § 423(d)(3), this does not mean that medical opinion must necessarily be supported by "objective" clinical or laboratory findings. *See, e. g.*, Stark v. Weinberger, 497 F.2d 1092, 1097 (7 Cir. 1974); Waters v. Gardner, 452 F.2d 855, 857 (9 Cir. 1971); Bittel v. Richardson, 441 F.2d 1193, 1195 (3 Cir. 1971); Moore v. Finch, 418 F.2d 1224, 1226 (4 Cir. 1969); Kennedy v. Weinberger, 369 F.Supp. 336, 339–340 (E.D.Pa.1974); Forbes v. Finch, 307 F.Supp. 1000 (E.D. Tenn.1969). A physical or mental impairment "does not cease to exist merely because it is difficult of proof." Celebrezze v. Warren, 339 F.2d 833 (10 Cir. 1964).

Because of the combination of these circumstances the case is remanded to the administrative law judge to give the claimant an opportunity to produce expert medical testimony regarding her disabilities, testimony as to the cumulative effect of these disabilities upon her, and evidence as to occupational opportunities open to a person of claimant's age, education, and skills in light of her physical impairments.