Lucy RIVERA, Plaintiff,

v.

Joseph CALIFANO, Secretary of Health, Education and Welfare, Defendant.

No. 79 CIV. 0607 (LBS).

United States District Court, S. D. New York.

Jan. 16, 1980.

Bronx Legal Services Corp., Lloyd B. Silverman, Howard Sherman, John Bowers, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty. S. D. N. Y., William J. Brennan, Asst. U. S. Atty., New York City, for defendant.

## OPINION

SAND, District Judge.

This is an action brought under the Social Security Act, 42 U.S.C. § 405(g) (the "Act") to review a final determination of the Secretary of the Department of Health, Education and Welfare (the "Secretary") who determined that plaintiff is not disabled within the meaning of 42 U.S.C. § 423(d)(1)(A), § 223(d)(1)(A) of the Act as amended.[1] Plaintiff asserts that this Court should order that the matter be remanded for consideration of "new evidence". Plaintiff's Memorandum of Law at 4–7. The issue before this Court is thus whether plaintiff has met her statutory burden of demonstrating "good cause" for such a remand.[2]

The Court concludes that this case should be remanded to the Secretary.

## I. BACKGROUND

### A. *Prior Proceedings*

On October 28, 1976, plaintiff Lucy Rivera applied for Supplemental Security Income "SSI"), and on December 1, 1976, she filed for Social Security disability insurance benefits. (Tr. 46–53).[3] On February 25, 1977, the Secretary informed plaintiff that her application for SSI benefits had been denied, and on February 27, 1977, the Secretary denied plaintiff's application for disability benefits. (Tr. 54–55). On March 3, 1977, plaintiff requested that the Secretary reconsider these determinations and on May 12, 1977, the Secretary reaffirmed the decisions. (Tr. 61–63). On May 18, 1977, plaintiff requested a hearing ("the hearing") concerning these determinations, which hearing was held before an administrative law judge ("ALJ") of the Bureau of Hearings and Appeals on September 8, 1977. (Tr. 65, 29). Plaintiff was not represented by counsel at the hearing. On November 14, 1977, ALJ Milton Pravitz found that plaintiff was not disabled and was also not entitled to SSI benefits. (Tr. 23). On February 6, 1978, the Appeals Council affirmed the decision of the administrative law judge.

Counsel for plaintiff thereafter requested an extension of time within which plaintiff could commence a civil action challenging this decision. The reason stated for this request was to allow plaintiff "to secure additional information from her treating psychiatrist, K. L. Clark [sic], M.D., to support a possible request for remand or for reopening." (Tr. 8). In subsequent corre-

---

1. Section 423(d)(1)(A) defines the term "disability" to mean "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .".

   Section 233(d)(2)(A), 42 U.S.C. § 423(d)(2)(A), provides that an individual suffers a disability within the meaning of the statute "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

   Section 223(d)(3), 42 U.S.C. § 423(d)(3) states that "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Four factors are to be considered in assessing a claim of disability: "(1) The objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain and disability testified to by the claimant and others; and (4) the claimant's educational background, age and work experience." *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978).

2. Defendant has also cross-moved under Rule 12(c) of the Federal Rules of Civil Procedure for a judgment on the pleadings on the theory that the Secretary's decision that plaintiff is not under a disability is supported by substantial evidence and therefore must be affirmed. The Rule 12(c) motion is academic in light of our decision to remand this action.

3. "Tr." refers to pages in the administrative record filed with defendant's answer to the complaint.

spondence of October 19, 1978 with the Department of Health, Education and Welfare, plaintiff's attorney elaborated upon his request for an extension of time and his difficulties in obtaining supporting documents necessary for a remand. He indicated that he:

"[f]irst wrote to Ms. Rivera's source of psychiatric treatment, the Lincoln Community Mental Health Center, on March 16, 1978. . . . The clinic's response to this letter was substantially delayed due to uncertainty on the part of Ms. Rivera's treating psychiatrist, Dr. K. L. Clark [sic], as to whether disclosure of such information might violate privacy provisions of the N.Y. Mental Hygiene Law. When a response was finally made on April 20, 1978, it consisted solely of a completed residual functional capacity form [the supplemental questionnaire] devoid of any supporting diagnostic or other clinical information." (Tr. 4).

On December 4, 1978, the Appeals Council granted plaintiff's request for an extension of time. At the same time, the Council informed plaintiff's attorney that after consideration of the plaintiff's questionnaire, it found "no basis for changing its prior action" and the decision of the Secretary was therefore final. (Tr. 3).

On February 2, 1979, plaintiff commenced this action challenging the decision of the Secretary insofar as it denied plaintiff's claim for disability benefits.

## B. *Non-Medical Evidence Concerning Plaintiff's Disability*

Plaintiff is a 51 year old woman with a sixth grade education who has worked for 23 years in a variety of jobs, including cleaning swim suits in a swim wear factory, putting paper towels in a dispenser, filling bottles with oil in a plant, and applying rhinestones on materials. Her last employment, which ended in May, 1976, was as a busgirl in a fast food restaurant. Plaintiff testified at the hearing that she was forced to leave this job, as was the case with respect to all her previous jobs, because of her asthma and shortness of breath. (Tr. 33–38).

Plaintiff is 4'10'' tall and weighs approximately 188 pounds. (Tr. 157). She testified that she has been suffering from asthma for 20 years (Tr. 35) for which she is currently taking medication. (Tr. 41). She also stated that she is under treatment and taking medication for her nerves: "They have been treating my nerves because I feel very excited, very excited, from my nerves." (Tr. 40). She indicated that she

"cannot work anymore, because of the very strong anemia and the type of tiredness I feel. I feel depressed. I feel like I don't want to do anything. And, during the day I get very nervous."

(Tr. 43). She said that she feels particularly nervous when in proximity with other people because she has been robbed three times. (Tr. 43–44).

## C. *The Medical Evidence*

The medical evidence principally concerns four areas; (a) a hysterectomy operation performed on plaintiff in 1976 and which is not part of plaintiff's claim of disability (Tr. 91–104); (b) plaintiff's treatment for a urinary tract infection and gallbladder removal, after which plaintiff received no follow-up treatment and was found fit to return to work; (c) medical records concerning plaintiff's asthma condition; and (d) plaintiff's nervous condition.

With regard to plaintiff's asthmatic condition, the records indicate that plaintiff was hospitalized in October, 1976 for treatment following an attack (Tr. 134–150), which treatment resulted in her "being sent home in good condition to be followed in clinic." (Tr. 135). The discharge summary prepared by the hospital staff physician following this hospitalization also stated that plaintiff "has required medical attention" since age 22 for her asthma. *Id.* Two handwritten notes from her treating physician, a general practitioner, indicate that the plaintiff received treatment for bronchial asthma (as well as obesity and "possible osteoarthritis" of the knees) but these notes contain no indication of the severity of the asthmatic condition. (Tr. 79, 170).

The records of both a physician administering treatment to the plaintiff during her hospitalization and the physician consulted by the Secretary suggest that some of plaintiff's wheezing may be voluntary. (Tr. 145, 153).

Finally, with respect to plaintiff's nervous condition, the evidence before the ALJ consisted of the following: (a) a report from Metropolitan Hospital dated October, 1976, which indicated that plaintiff's psychiatric evaluation was that of an "hysterical personality" (Tr. 145); (b) a statement from a staff psychiatrist at Lincoln Community Mental Health Center (the "Center"), dated October 25, 1976, that plaintiff was "attending this clinic because of emotional disturbances" (Tr. 78); (c) a report by Dr. Meyer Friedenthal, dated April 18, 1977, which stated that plaintiff suffered from "severe psychoneurosis" and that she probably took stelazine (Tr. 153); (d) a statement from a staff psychologist of the Center, dated April 27, 1977, stating that plaintiff "is under great stress at this time" (Tr. 171); and (e) the statement of a psychiatric social worker of the Center, dated September 27, 1977, stating that "[i]t is our opinion that due to both physical and mental ailments, Ms. Rivera is not able to be employed at this time. . . . Ms. Rivera has been diagnosed as manic depressive. She is being stabilize [sic] by medication."

The other medical evidence before the ALJ concerning plaintiff's nervous condition consisted of a report dated October 18, 1977 by Dr. Hugh Morales, a psychiatrist and neurologist who performed a consultative examination of the plaintiff on behalf of the Secretary. In this report, Dr. Morales wrote that plaintiff:

"seems to be presently more concerned about her asthmatic and arthritic condition, stating, that her nerves are bad, but not as bad as before; and that she could

have continued working if it were not for her asthma and arthritis."

*Id.* at 175. Dr. Morales found that plaintiff:

"behaved appropriately, was in good contact with examiner, friendly, pleasant and cooperative. She is well oriented in main spheres, coherent and relevant. Patient elaborated in detail about how difficult it is for her to move around, to bend down, because of her constant pain in practically every part of her body. She described in detail her frequent asthmatic attacks and shortness of breath. Patient denied delusions, hallucinations or serious depressive or suicidal manifestations. Patient admitted that in the past she had become very depressed, isolated, "I was very bad, I just don't remember much about it." Memory and intellectual capacity are grossly intact. Insight and judgment is [sic] superficial."

*Id.* at 176. Dr. Morales concluded that although the plaintiff had been diagnosed as a manic depressive, "at present she is very compensated, making it difficult to substantiate that diagnosis." *Id.* He found that plaintiff's prognosis was "guarded" in terms of her asthmatic and arthritic conditions. Dr. Morales further concluded that "[f]rom a psychiatric point of view, there is no gross or distressing psychopathology; therefore her prognostic evaluation is presently fair."

## D. *The ALJ's Decision*

In his decision, the ALJ determined that plaintiff's principal complaints concern her asthma and her nervousness.[4] The ALJ found that the medical records suggested that plaintiff's asthmatic symptoms were traceable to her nervous condition and were in some measure, self-induced. (Tr. 22). The ALJ concluded:

ALJ noted that there was only one abnormal blood pressure reading, that plaintiff's blood pressure returned to normal limits within one week, apparently without treatment or medication, and that all other readings were within normal limits. (Tr. 21).

---

4. In his decision, the ALJ also noted that the plaintiff complained of back pains and high blood pressure but that these were insignificant. With respect to the back pains, the ALJ stated that there was no medical evidence that they constituted a severe impediment. (Tr. 21). With respect to the high blood pressure, the

"It would thus appear from a study of the entire record that the controlling element in the assessment of the claimant's condition is the severity of her nervous condition. Without furnishing any substantiating details, the submission from the treating mental health center offers a diagnosis of manic depressive and concludes that the claimant is not employable at this time. On the other hand, the consulting psychiatrist reports a home regimen but slightly restricted. He found no basis in his examination for a diagnosis of manic depressive psychosis. During his interview the claimant behaved appropriately, was in good contact, was well oriented in the main spheres, was coherent and relevant, was able to elaborate significantly on her physical problems and denied conduct evidencing serious psychiatric impairment. The mental prognosis of the psychiatrist was fair.

As sometimes is the case with asthmatic conditions, there here exists an apparent interaction between the claimant's asthmatic attacks and her emotional condition. However, the record in this case does not indicate that, viewed singly or in combination and whatever the interaction, the claimant's impairments were of sufficient severity as to have precluded employment for a continuous period of a year or more, or are now of such severity as to preclude such employment. This claim must therefore be denied."

## II. THE APPROPRIATENESS OF REMAND

### A. *The New Evidence*

As noted, plaintiff contends that additional medical evidence, attached as an exhibit to her complaint, constitutes good cause for a remand of her case to the Secretary. This additional evidence consists of (a) a two page "Supplemental Questionnaire as to Residual Functional Capacity" completed by Dr. K. L. Clarke, of the Lincoln Community Mental Health Center, dated April 20, 1978 and (b) a diagnostic letter dated January 30, 1979 from Dr. Clarke to plaintiff's attorney. Included in plaintiff's exhibit is a letter dated January 30, 1979 from Dr. Clarke stating that "[i]f the case goes to trial, the Center will be more than happy to provide expert witness to testify on the patient's behalf."

With respect to the supplemental questionnaire, Dr. Clarke stated that the psychiatric impairments of plaintiff's functions ranged from "moderate" (defined as "an impairment which affects but does not preclude ability to function") to "moderately severe" (defined as "an impairment which seriously affects ability to function"). In no function did Dr. Clarke conclude that the plaintiff's impairment was "severe" (defined as "an extreme impairment of ability to function"). Plaintiff's impairment was described as "moderate" in the following categories: restriction of daily activities; deterioration of personal habits; comprehension and ability to follow instructions, work where contact with others will be minimal, and perform varied tasks. Plaintiff's impairment was described as "moderately severe" with respect to the following functions: constriction of interests; ability to perform work requiring frequent contact with others; ability to perform simple, complex or repetitive tasks, and ability to relate to other people.

As noted, in its letter of December 4, 1978 extending plaintiff's time to file a civil action, the Appeals Council indicated that it had considered Dr. Clarke's supplemental questionnaire, which had not been before the ALJ. The Council wrote:

"While Dr. Clarke indicated that Ms. Rivera has moderate to moderately severe restrictions due to her psychiatric condition, no supporting clinical findings have been presented. Therefore, the Council finds no basis for changing its prior action, and the hearing decision issued on November 14, 1977, stands as the final decision of the Secretary." (Tr. 3).

Apparently, in an effort to provide the "supporting clinical findings" which the Appeals Council found lacking, plaintiff offers "additional evidence" consisting of a letter from Dr. Clarke to plaintiff's lawyer. In

this letter, Dr. Clarke noted that plaintiff's complaints were of "anxiety, tenseness, headaches and general nervousness surrounding constant arguments." He stated that the plaintiff has told him that she has occasions

> "where she becomes happy and in an elated mood, will then be able to do housework, go on shopping sprees, and take care of self . . . goes dancing by self, or to Puerto Rico for 3 weeks-1 month."

*Id.* On other occasions, Dr. Clarke indicated, plaintiff becomes depressed and will simply watch T.V. or "leave [the] house and sit on park bench" where she may hear voices telling her to run away. When depressed, plaintiff is "unable" to do housework. Dr. Clarke noted that at times, plaintiff "admitted to hallucinations and suicidal thoughts." However, at present she denies "suicidal or homocidal [sic] thoughts" and her "orientation and judgement [sic] fair". Dr. Clarke stated that "a diagnosis of manic depression illness is entertained due to family history and mood swings", and his prognosis is "extremely guarded". He also wrote that plaintiff "presents symptoms of mixed schizophrenic".

### B. *Discussion*

A remand for consideration of new evidence is authorized by 42 U.S.C. § 405(g), which provides in relevant part:

> "The Court . . . may at any time, on good cause shown, order additional evidence to be taken before the Secretary and the Secretary shall, after the case is remanded and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or its decision or both . . . ."

We have considered the Government's papers and conclude that the version of the

record offered therein differs from the record which the Court has examined.[5] The Court believes that plaintiff has shown good cause for a remand.

"Courts have not hesitated to remand for the taking of additional evidence, on good cause shown, where relevant, probative, and available evidence was . . . not before the Secretary . . . ." *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975). It has been held that in interpreting the "good cause" standard, "courts must not require such a technical and cogent showing of good cause as would justify the vacation of a judgment or the granting of a new trial, where no party will be prejudiced by the acceptance of additional evidence and the evidence offered bears directly and substantially on the matter in dispute." *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975) (quoting *Wray v. Folsom*, 166 F.Supp. 390 (W.D.Ark.1958)). See *Terio v. Weinberger*, 410 F.Supp. 209, 213 (W.D.N.Y.1976); *Martin v. Richardson*, 325 F.Supp. 686, 688-89 (W.D.Va.1971). Remand is appropriate where the "addition of evidence to the record would result in a reasonable chance that the hearing officer would reach a different conclusion." *Finnstrom v. Mathews*, 412 F.Supp. 415, 416 (D.Ariz. 1976).

In light of the foregoing principles, the Court holds that remand of this action is appropriate. The Court concludes that Dr. Clarke's letter provides supporting findings which the Appeals Council stated were necessary to complement the supplemental questionnaire. We disagree with the Government's characterization that Dr. Clarke's letter "merely iterates" the supplemental questionnaire. The letter, taken together with the questionnaire, provide supporting detail which the ALJ stated was missing in the record before him. The additional evidence is "relevant and probative",

---

5. Thus, for example, the Government's Memorandum of Law does not mention or discuss those impairments, which were categorized as "moderately severe" by Dr. Clarke in the supplemental questionnaire. Nowhere does the Memorandum indicate that on previous occasions, plaintiff was described as suffering from

a mental impairment variously diagnosed as "hysterical personality" or "severe psychoneurosis". Nor does the Government Memorandum take note of the willingness of the Lincoln Community Mental Health Center to provide expert testimony on plaintiff's behalf.

and "bears directly and substantially on the matter in dispute", *i. e.*, the extent of plaintiff's ability to engage in substantial gainful activity. See *Parker v. Califano*, 441 F.Supp. 1174, 1180–83 (N.S.Cal.1977) (remand ordered where new psychological evidence raised "substantial question" as to whether plaintiff had a mental deficiency as defined by § 12.05(c) of the Appendix to Subpart P of 20 C.F.R. § 404.1 et seq. or a functional nonpsychotic disorder under § 12.04 of the Appendix to Subpart P of 20 C.F.R. § 404.1 et seq.); *Taddeo v. Richardson*, 351 F.Supp. 177, 179 (C.D.Cal.1972). In deciding to remand this case, the Court also takes note of the fact that as indicated, *supra*, the Lincoln Community Mental Health Center has volunteered to provide expert witnesses on plaintiff's behalf.

Remand in this case is consistent with the principle that "[t]he Social Security Act is a remedial statute which must be 'liberally applied'; its intent is inclusion rather than exclusion. See *Cutler v. Weinberger, supra*, 516 F.2d at 1285. . . ." *Marcus v. Califano*, 615 F.2d 23, at 29 (2d Cir. 1979). A decision to remand gains added strength where, as here, the claimant, who testified through an interpreter, was not represented by counsel at the hearing before the ALJ, *Cutler v. Weinberger, supra*, 516 F.2d at 1286, *Gold v. Secty. of H. E. W.*, 463 F.2d 38, 43 (2d Cir. 1972), and where the claimant's inability to present adequate supporting documentation was apparently largely the product of factors not of her own doing.[6] We do not deal here with a case where the claimant seeks simply to "relitigate the same issues", after having adduced a full evidentiary record at her hearing. See *Bradley v. Califano*, 573 F.2d 28, 30–31 (10th Cir. 1978); rather, remand is "in keeping with a sense of fair play". *Kalb v. Gardner*, 249 F.Supp. 1008, 1009 (S.D.N.Y.1965).

Accordingly, this case is remanded to the Secretary for the consideration of the new evidence that the plaintiff has put forth and of any other new evidence which the Secretary may accept.

SO ORDERED.

---

6. See pages 160–161, *supra* (plaintiff's treating psychiatrist was reluctant to supply information for fear of violating privacy provision of state mental hygiene law).