**Robert ESSIG, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. CV–78–2504.**

United States District Court, E. D. New York.

Dec. 29, 1981.

**56**

Harry J. Binder, Patchogue, N.Y., for plaintiff.

Ralph L. McMurry, Asst. U. S. Atty., Brooklyn, N.Y., for defendant.

### MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This action is brought pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g) to review a final determination of the Secretary of Health, Education and Welfare ("Secretary")[1] which denied the claimant's application for disability insurance benefits.

For the reasons set forth below, this matter is remanded to the Administrative Law Judge ("ALJ") to develop a record that includes medical evidence as to the claimant's ability to sit, stand, and use public transportation. Although the ALJ determined that the claimant retained the residual capacity to engage in substantial gainful employment (14)[2], this determination should be reevaluated after complete findings on the above enumerated issues, in order to determine whether the claimant possesses a realistic ability to work.

#### 1. *Procedural History.*

The claimant's application for disability insurance benefits was first denied by the Social Security Administration on August 5, 1977. (61–66). Reconsideration was granted by the Administration, but the application was re-denied shortly thereafter. (68).

A *de novo* hearing, at the claimant's request, was held before an Administrative Law Judge on May 24, 1978. (22–60). Regrettably, the claimant was not represented by counsel at the hearing. On June 5, 1978, the ALJ determined that the claimant was not under a disability, as defined under Sections 216(i) and 223 of the Act (5–14), at any time before the date of the decision. Upon an affirmance by the Appeals Council of the Social Security Administration, the ALJ's decision was made the final determination of the Secretary. The claimant asserted his rights under § 405(g) and sought review in this Court of the Secretary's decision within sixty days of receiving notice of the decision as prescribed by the provision.

#### 2. *The Alleged Disability.*

The facts developed before the ALJ reveal that the claimant is a forty-one year old man, who lives with his wife and four children. (32–33). The claimant is a high school graduate, and received training at the Police Academy. (35). In addition to being a New York City Police Officer, the claimant's past jobs include working as a bus driver, mailman, and hotel clerk. (36–38).

The claimant alleges that he became unable to work on June 24, 1976, as the result

---

**1.** The Department of Health, Education and Welfare now operates under the title of The Department of Health and Human Services.

**2.** Pages in parenthesis refer to the record filed by the Secretary.

of a hip injury. According to the claimant, he first injured his hip in January, 1976, and reinjured it in June, 1976. (39). Although he returned to work as a gas dispenser in August, 1976, he stopped working after four weeks because of pain associated with his hip injury. He has not worked or sought employment since August, 1976.

The claimant saw two physicians in connection with his hip injury. The first, Dr. Parisi, was unable to diagnose the injury. (41). He then saw an orthopedic surgeon, Dr. Rothermel, who suggested a total hip replacement. This replacement was performed in March, 1977. (42–43). The claimant last saw a physician in connection with his hip injury in August 1977. (47).

The claimant contends that he is in constant pain as a result of his hip injury. He has not driven a car since August, 1977 because the pain impedes his ability to get in and out of cars (35), and he cannot take public transportation to work for fear of falling as he boards the bus or train. (58).

Despite these claims, the record reveals that he takes no medication for the pain (45), and that he can walk about one-half mile on level ground before the onset of pain (46). He was found to have mild pain on flexion beyond 100 degrees with muscle weakness in hip flexors (pulling knee to chin) (95). His main activities involve walking and sitting in the yard, weather permitting, and watching television (49).

### 3. The Law.

Although Section 405(g) of the Social Security Act limits the scope of this Court's review of the Secretary's final decision, this provision is not as restrictive as a literal reading might initially suggest. Under this section, "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." The Second Circuit, however, has consistently indicated that this standard must be broadly construed in light of the Act's beneficent purpose. The Act is remedial in nature, and the "substantial evidence" test should be liberally construed in favor of the claimant. See Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir. 1975).

■ Consistent with this view of the Act, the Secretary's final decision will be sustained if it is supported by substantial evidence "on the record as a whole." Cutler, supra at 1285; Gold v. Sec. of Health, Education and Welfare, 463 F.2d 38, 41 (2d Cir. 1972). If there are gaps in the record as to material facts, however, this will cause a skewed view of the evidence that makes it impossible to conclude that a decision is supported by substantial evidence. Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980); Cutler, supra at 1285. To this end, where it is clear that material evidence "was either not before the Secretary or was not explicitly . . . considered by him, . . . although such consideration was necessary to a just determination of a claimant's application," the matter should be remanded to the Secretary for the taking of that additional evidence. Id. See Hankerson v. Harris, 636 F.2d 893, 896 (2d Cir. 1980); Parker, supra at 235; Cutler, supra at 1285; Gold, supra at 43.

■ The record in this case indicates that the interests of justice would best be served by remanding this case to the ALJ. As already noted, the claimant appeared without counsel at the hearing before the ALJ. The record also indicates that, although the treating physician's report stated that the claimant could not return to his previous job as a police officer, the report made no express finding as to the claimant's ability to perform other work. Lastly, although the claimant complained of pain in his leg and of his inability to use public transportation, the hypothetical question posed by the ALJ to the vocational expert did not incorporate any assumptions as to the claimant's ability to sit, stand or use such public transportation. (58). The finding of the vocational expert that the claimant retained a residual capacity to perform various sedentary jobs was, therefore, based on incomplete evidence.

Because the claimant appeared without counsel, the ALJ had a duty "scrupulously and conscientiously to probe into, inquire of,

and explore all the relevant facts." *Cutler, supra* at 1286; *Gold, supra* at 43. The ALJ must "emphasize the desirability of producing, and ... afford an opportunity to produce expert testimony, as to the [claimant's] medical disabilities and their effect on [the claimant's] capacity to engage in any substantial gainful work." *Cutler, supra* at 1286; *Silva v. Harris*, 505 F.Supp. 407 (S.D.N.Y.1979).

As previously indicated, although the treating physician opined that the claimant could not return to his previous job as a police officer, the physician offered no opinion as to the claimant's capacity to perform other work. The ALJ, instead of soliciting the opinion of the treating physician as to the claimant's residual capacity to perform other work (*Hankerson v. Harris, supra*, at 896) "found implicit in [the] ... report the impression that the plaintiff was not precluded from other types of work due to his hip injury." Without anchoring this conclusion in the evidence, the ALJ has failed to satisfy his burden to develop the record. *Hankerson, supra* at 896; *Cutler, supra* at 1286.

Moreover, the vocational expert expressly stated that neither the record nor the hypothetical question posed to him by the ALJ contained any evidence as to the claimant's ability to use public transportation. (58). Since the claimant indicated he could not drive a car, a finding that he could get to, sit in, and effectively use public transportation is necessary if we are to conclude that the claimant's residual capacity to perform other jobs is realistic. Such a conclusion, although required by the Second Circuit (cf. *Aubeuf v. Schweiker*, 649 F.2d 107, 115 (2d Cir. 1981)) could not be made by the vocational expert in this case because of the lack of evidence in the record on these issues.

For the reasons stated above, it is ordered that the Secretary's final decision be reversed and remanded in order to develop evidence as to the claimant's ability to sit, stand and use public transportation. Additionally, once this evidence is developed, it must be incorporated into the hypothetical question posed to the vocational expert to enable him to express an opinion as to whether findings on these issues affect the claimant's realistic capacity to engage in substantial employment.